MISSISSIPPI UNEMPLOYMENT COMPENSATION COMMISSION *et
al. v.* AVENT.

(In Banc. Oct. 27, 1941. Suggestion of Error Overruled Nov. 24,
1941.)

[4 So. (2d) 296. No. 34712.]

86

(In Banc.   Nov. 24, 1941.)

[4 So. (2d) 684.   No. 34712.]

Harry M. Bryan and Henry Edmonds, both of Jackson, and Greek L. Rice, Attorney-General, for appellants.

James Stone & Sons, of Oxford, for appellee.

Argued orally by **Henry Edmonds** and **Harry M. Bryan**, for appellants, and by **Phil Stone**, for appellee.

**Alexander, J.,** delivered the opinion of the court.

In 1938 and prior thereto, appellee owned a drug store and a dairy in the town of Oxford. One R. B. Ragland was employed at the dairy. At the drug store there were six employees and at the dairy four, all of whom were controlled by appellee who became subject to the requirements of our Unemployment Compensation Law, Laws 1936, ch. 176; Laws 1938, ch. 147; Laws 1940, ch. 295. Ragland thereupon became entitled, as an employee in a covered employment under the act, to have wage credits set up for his benefit in line with the policy and purposes thereof. During the year mentioned appellee, by executed deed, gave the dairy with its stock and appurtenances to his wife. Thereupon appellee discontinued the maintenance of wage credits and Ragland filed claim for benefits, which was denied by the Claims Examiner for the Commission. The finding of the Examiner was reversed by the referee, and, upon appeal to the Board of Review, the claim was again allowed. Following procedural routine under the Act, the matter was reviewed by the Circuit Court, which disallowed the claim, and the matter is before this Court upon appeal from the Circuit Court.

The pertinent provisions of the Act are as follows:

" 'Employing unit' means any individual or type of organization, including any partnership, association, trust, estate, jointstock company, insurance company or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee or successor thereof, or the legal representative of a deceased person, which has or subsequent to January 1, 1935, had in its employ one or

more individuals performing services for it within this state. All individuals performing services within this state for any employing unit which maintains two or more separate establishments within this state shall be deemed to be employed by a single employing unit for all the purposes of this act. Each individual employed to perform or to assist in performing the work of any agent or employee of an employing unit shall be deemed to be employed by such employing unit for all purposes of this act, whether such individual was hired or paid directly by such employing unit or by such agent or employee, provided the employing unit had actual or constructive knowledge of the work.'' Sec. 19(g).

'' 'Employer' means:

''(1) Any employing unit which for some portion of a day, but not necessarily simultaneously, in each of twenty different weeks, whether or not such weeks are or were consecutive, within either the current or the preceding calendar year, has or had in employment, eight or more individuals (irrespective of whether the same individuals are or were employed in each such day);

. . .

''(4) Any employing unit which, together with one or more other employing units, is owned or controlled (by legally enforceable means or otherwise) directly or indirectly by the same interests, or which owns or controls one or more other employing units (by legally enforceable means or otherwise), and which, if treated as a single unit with such other employing units or interests, or both, would be an employer under paragraph (1) of this subsection.'' Sec. 19(h).

The Board of Review found as facts substantially as follows: That appellee was in 1938 the owner and operator of both establishments, employing in the aggregate eight or more individuals; that upon the transfer of title to the dairy to his wife, he retained supervision, control and management thereof ''just as it had theretofore been handled except that at intervals he gave to his wife a

check for the profits, if any, accrued;'' that appellee employed and discharged all employees and fixed their rate of pay and hours of work; that he received no salary for managing the dairy, and profits therefrom were used by his wife in remodeling and furnishing their home; that his wife and son were permitted to write checks on his personal account to which the money received from the operation of the dairy was deposited; that while a separate set of books of account was set up, there was no balancing of accounts between the drug store and the dairy.

In addition to the findings by the Board of Review, the occasion and purpose of the transfer to Mrs. Avent were thus explained by appellee himself: ''In talking confidentially with Mr. B. one night . . . I was discussing with him the tax I was having to pay, unemployment tax, and he said 'deed the property to your wife then you will get out of it,' so I proceeded at once to deed the dairy to my wife in order to keep from paying the tax.'' He further stated that his wife wanted to build a new home, and that it was understood that it was to be furnished at his wife's expense and that her only available source of income was the dairy. Mrs. Avent testified that, regardless of the matter of record title to the dairy, she and her husband ''really operated those two businesses with the same purpose and for the same interest, for each other and for (our) son.''

In view of Section 6(i) of the Act, the findings of fact by the Board of Review, being amply supported, should have been taken as conclusive by the trial court and are so taken by us. This section is as follows: ''In any judicial proceeding under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court [Circuit Court] shall be confined to questions of law.''

We are not concerned with the validity of the conveyance of the dairy to the wife of appellee, nor with the

right of a taxpayer to avoid liability for a tax by completely divesting himself of his status as an "employing unit." One may avoid the status but not evade the liability. The sole question here is whether appellee under the particular circumstances of the case so completely altered the status of the two employing units that they ceased to be "controlled (by legally enforceable means or otherwise) directly or indirectly by the same interests." In this connection the affinity between the two activities is as relevant as that between their two proprietors. The argument of appellee based upon a lack of congruity between a drug store and a dairy does not consist with actual facts nor popular conception. It would do injustice to the modern drug store to question its ability to cater to the multiplied needs both of the inner man and the outer woman within the range of the average imagination. Its versatility and resourcefulness has long since passed into proverb. Only one untutored in modern merchandising methods would contend that the drug store counted itself alien to anything which affected the comfort or caprice of its constituency. Certainly, the products of a dairy have become by popular demand a leading accessory to its success.

So that the array of cited authorities which fix liability upon corporations which are controlled by the same interests through majority stock ownership find more evident justification in considering the liability of individuals, especially since the statute specifically includes employing units which are "controlled . . . indirectly by the same interests . . .," and embraces within the definition of such units "any individual."

We are of the opinion that the quality of control retained and exercised by appellee, interpreted in the light both of his expressed purpose to evade liability and of the benefits still accruing directly and indirectly to him, operates to keep it within the spirit and purpose of the act. The trial court was in error in overruling the findings of the Board of Review.

Reversed, and judgment here for appellants.

**Alexander, J.,** delivered the opinion of the court on suggestion of error.

The suggestion of error stresses again the contentions reviewed in the former opinion and overlooks that the identity between the two activities involved was not adjudged solely upon their compatibility as related occupations, but also upon the relationship between the husband who, for all practical purposes, is in control of both establishments, and the wife who, though the legal owner, is only nominally the proprietor of the dairy. The record separation of the two activities was deemed not to have been sufficiently removed from mere formality to divest them of that unity of control and interest contemplated by the act.

It is next suggested that, even though the act in question is constitutional, a construction thereof which operates to include appellee within its provisions results in depriving him of the property without due process of law, and denies to him the equal protection of the law, contrary to Mississippi Constitution, Sec. 14, and the United States Constitution, Amend., Art. 14, Sec. 1. This contention was before the Court in considering this appeal and its decision was intended as a rejection thereof. Yet it is well to make specific reference thereto so that it may appear that the intepretation and application of the statute are held not violative of either the state or federal constitution.

Suggestion of error overruled.