MOUNT VERNON BANK & TRUST COMPANY et al.; Appellants,
v. IOWA EMPLOYMENT SECURITY COMMISSION
et al., Appellees.

No. 46346.

October 19, 1943.

E. A. Johnson, of Cedar Rapids, for appellants.

Homer M. Lyon, of Des Moines, for appellees.

Mulroney, C. J.—Plaintiffs are two Iowa banking corporations organized in 1931 and located in adjoining towns. In their petition against the Iowa Employment Security Commission they allege that Eloise S. Thomas, as trustee, holds six hundred forty shares (of the one thousand outstanding) in the Lisbon Bank and two hundred eighty shares (of the five hundred outstanding) in the Mount Vernon Bank; that she also

owned ten shares individually in the Lisbon Bank and five shares individually in the Mount Vernon Bank; that of the total outstanding shares in the two banks, seven hundred sixty-five shares of the stock of the Lisbon Bank are owned by the same persons who own four hundred twenty-three shares of the Mount Vernon Bank; that the officers of the two corporations are different persons, except D. U. VanMetre who is the vice president of both banks; and that neither of the banks employs as many as eight persons but the number of employees of each bank when added together does exceed eight. The petition further prayed that the attempted act of the defendants to compel plaintiffs to pay employment-security taxes be enjoined on the ground that each of them employs less than eight persons and as applied to them the common-ownership-and-control statute of the Iowa Employment Security law (section 1551.25F4, Code of 1939) is unconstitutional under various provisions of the State and Federal Constitutions.

The defendants' motion to dismiss presented the legal issues of applicability and constitutionality of section 1551.25F4, Code of 1939. The trial court held it was both applicable and constitutional, sustained the motion, and, after plaintiffs elected to stand on the ruling, dismissed the petition.

The Iowa Employment Security law is found in chapter 77.2 of the 1939 Code of Iowa. In general it provides for what amounts to a tax upon employers, to be paid to the defendant Commission to provide benefits for periods of unemployment. Section 1551.25 provides as follows:

"Scope. As used in this chapter, unless the context clearly requires otherwise: * * *

"F. 'Employer' means: 1. Any employing unit which for some portion of a day in each of fifteen different weeks within either the current or the preceding calendar year, excepting the calendar year 1935 (whether or not such weeks are or were consecutive) has or had in employment eight or more individuals (not necessarily simultaneously and irrespective of whether the same individuals are or were employed in each such day) * * *

"4. Any employing unit which together with one or more

other employing units, is owned or controlled (by legally enforceable means or otherwise) directly or indirectly by the same interests, or which owns or controls one or more other employing units (by legally enforceable means or otherwise), and which, if treated as a single unit with such other employing unit, would be an employer under paragraph 1 of this subsection * * *.''

I. The two banking corporations were ''controlled'' by the same interest within the meaning of the above statute. Control of a corporation is lodged in the majority shareholders. We said in First National Bank v. Fireproof S. B. Co., 199 Iowa 1285, 1293, 202 N. W. 14, 17:

''It is settled doctrine that every stockholder impliedly agrees, on becoming a member of the corporation, that the management and control of the corporate business and interests shall be vested in the majority.''

Appellants cite the case of Benner-Coryell Lumber Co. v. Indiana Unemployment Compensation Board, 218 Ind. 20, 31, 29 N. E. 2d 776, 780 [certiorari denied 312 U. S. 698, 61 S. Ct. 741, 85 L. Ed. 1132], where the Indiana Supreme Court, under a similar statute, held:

'' * * * that in the interpretation of the act before us, control of a corporation must be regarded as something more than that remote control that arises out of the fact that a majority of the holders of its voting stock may dictate who its directors shall be.''

But we think the holding in the Benner-Coryell case was well answered in State v. Kitsap County Bank, 10 Wash. 2d 520, 529, 117 P. 2d 228, 233, where the Washington Supreme Court, in speaking of the conclusion in the Benner-Coryell case, stated:

''Such a construction of the statute would render the administration of the law extremely difficult and complicated, as well as uncertain. The power of control unexercised would call for one classification, and a change of policy, including the exercise of the control, would require another. In view of the necessity for an established administrative policy, it would seem

that the power of control, and control, should be held to mean the same thing.''

In Maine Unemployment Compensation Comm. v. Androscoggin Junior, Inc., 137 Maine 154, 161, 16 A. 2d 252, 256, the court, in interpreting a similar statute, stated:

''The control required is not necessarily that legally enforcible. * * * Financially he [majority stockholder] had more in the corporation than either of the other stockholders. Owning the majority of the stock, he could control the election of the company's officers and determine its policies through the agencies of those so elected.''

In Unemployment Compensation Comm. v. City Ice and Coal Co., 216 N. C. 6, 9, 3 S. E. 2d 290, 292, the court, in interpreting a similar statute, stated:

''* * * when that individual or group having such control of a corporation likewise has similar control of one or more affiliated and related corporations (as in the instant case), these corporations—using the plain, natural and ordinarily accepted meanings of the words—are said to be 'controlled by the same interests.' ''

The Iowa common-ownership-and-control statute is a definition statute. The legislature has supplied the glossary which is to be used by all who seek to define the word ''employer.'' The term ''employer'' is given a meaning that might include our ordinary conception of two employers. But the legislature's right to define the terms in the statute in the way it sees fit is unlimited save by constitutional prohibitions. See State ex rel. Unemployment Compensation Comm. v. National Life Ins. Co., 219 N. C. 576, 587, 14 S. E. 2d 689, 695, where the court stated:

''We think it is self-evident that the Legislature, for the purpose of levying the tax, may determine what shall constitute employment subject to taxation, without regard to existing definitions or categories.''

Since the majority stockholder and stockholders of the two plaintiff corporations are the same, we hold that the language

of the act plainly brings the plaintiffs within its terms, and we pass to other questions to determine whether, with such an interpretation, the statute violates rights guaranteed to plaintiffs by the State and Federal Constitutions.

■ II. Plaintiffs argue that the statute violates section 10, Article I, of the Constitution of the United States, prohibiting impairment of the obligations of contracts, because the stockholders are not so related to the corporate entity as to be considered a part of it and it is a violation of the contract or charter between the state and the corporation to look behind the corporate entity for the purpose of imposing the tax liability based upon the actual ownership of the stock. A similar prohibition against a law impairing the obligation of contracts is found in section 21, Article I, of the Iowa Constitution. In Rodemacher v. Milwaukee & St. Paul Ry. Co., 41 Iowa 297, 301, 20 Am. Rep. 592, we held that a statute fastening liability on a railway for damages resulting from fires caused by the operation of the railway was constitutional. In that case it was argued " * * * that the statute in question * * * impairs the contract existing between the state and the corporation under which its charter is conferred." In answer to the argument, we there stated:

"But there is no implied contract between a state and a corporation that there shall be no change in the laws existing at the time of the incorporation which shall render the use of the franchise more burdensome or less lucrative, any more than there is between the state and an individual that the laws existing at the time of the acquisition of property shall remain perpetually in force."

In New Haven Metal & Heating Supply Co. v. Danaher, 128 Conn. 213, 222, 21 A. 2d 383, 388, the same attack of unconstitutionality was made against the common-ownership-and-control provision of the Connecticut Unemployment Compensation Act, and there the court quoted the following from an earlier Connecticut case (Converse v. Aetna National Bank, 79 Conn. 163, 169, 64 A. 341, 7 Ann. Cas. 75):

" 'A corporation organized under general incorporation laws, whether there be or be not a statutory reservation of a

power of amendment or repeal, holds its franchises necessarily subject to the right of the State to change those general laws, and their application to existing corporations, in any manner not prejudicial to vested interests of the latter or of its creditors or stockholders, nor inconsistent with the terms of the implied contract of the latter.' ''

It will also be noted that under section 8376, Code of 1939, the state reserves the right to alter corporate charters. We hold that the statute is not unconstitutional as impairing the obligation of contract.

III. Plaintiffs' chief attack upon the constitutionality of paragraph 4 goes to the "equal rights and privileges" and "due process" clauses of the Federal and State Constitutions (sections 6 and 9, Article I, of the Iowa Constitution, and the Fourteenth Amendment to the Constitution of the United States). Here, the basic charge of unconstitutionality is that the statute is arbitrary and discriminatory. Plaintiffs argue that the statute denies to them the same rights and privileges that are accorded to other employers with the same number of employees, and that a burden is placed upon them which is not laid upon other corporations with the same number of employees; that the distinction is arbitrary and capricious.

The litigation involving the constitutionality of common-ownership-and-control statutes found in the various state employment- (more often called unemployment-) compensation statutes presents an interesting study. More than half of the states included a common-ownership-and-control provision in their various unemployment-compensation statutes.

At the outset, the principal classification of employers with eight or more employees was assailed in the case of Carmichael v. Southern Coal & Coke Co., 301 U. S. 495, 509, 510, 57 S. Ct. 868, 872, 873, 81 L. Ed. 1245, 109 A. L. R. 1327, decided by the Supreme Court of the United States May 24, 1937. In the opinion, the Supreme Court of the United States, speaking through Mr. Justice Stone, held the "contributions" which the Alabama act exacted from employers were a tax, and the validity of the act under the Federal Constitution was " * * * to be determined in the light of constitutional principles applicable to state taxation." In answer to the argument that there can be

no reason for a distinction, for the purposes of taxation, between those who have only seven employees and those who have eight, Justice Stone stated:

"Yet, this is the type of distinction which the law is often called upon to make. It is only a difference in numbers which marks the moment when day ends and night begins, when the disabilities of infancy terminate and the status of legal competency is assumed. It separates large incomes which are taxed from the smaller ones which are exempt, as it marks here the difference between the proprietors of larger businesses who are taxed and the proprietors of smaller businesses who are not. Administrative convenience and expense in the collection or measurement of the tax are alone a sufficient justification for the difference between the treatment of small incomes or small taxpayers and that meted out to others."

After the constitutionality of the classification was set at rest by the decision in the Carmichael case, the common-ownership-and-control provision was assailed on the grounds here urged. About the first case to reach a court of last resort was the case of Independent Gasoline Co. v. Bureau of Unemployment Compensation, 190 Ga. 613, 616, 10 S. E. 2d 58, 60, decided June 9, 1940 [certiorari denied 311 U. S. 707, 61 S. Ct. 175, 85 L. Ed. 459]. In this case, Hardin, the president and treasurer of two corporations, owned the majority stock in both of them. One corporation had five employees and one four. In holding the act unconstitutional under the State and Federal "equal protection" constitutional provisions, the Georgia Supreme Court stated:

"But it is contended that the legislature was authorized to place this defendant in a classification different from similar corporations and individuals, because of the fact that the owner of a majority of its stock owns a majority of the stock of another corporation, and that the two corporations are controlled by the same interests. This reasoning ignores the fact that this defendant is utterly powerless to determine who shall own its capital stock, or to fashion the business transactions and conduct of its stockholders. Since these are matters beyond the

control of the corporation, they do not constitute a basis justifying the classification; and a classification must be reasonable and have a fair and substantial relation to the object of the legislation.''

On November 8, 1940, the Supreme Court of Indiana interpreted a similar provision in the Indiana unemployment-compensation law, in the case of Benner-Coryell Lbr. Co. v. Indiana Unemployment Compensation Board, supra. With liberal quotations from the Georgia decision in the Independent Gasoline Company case, the Indiana Supreme Court held that its common-control provision would be unconstitutional if applied to two corporations with less than eight employees each, but more than eight if considered as one employing unit, where the majority stock in both was owned by one person. But the decision only concludes that the word ''control'' as used in the statute does not reach the situation where the only control is ownership of the majority of voting stock.

The reasoning of the Georgia Supreme Court in the Independent Gasoline Company case was rejected by the Washington Supreme Court in that court's decision in State v. Kitsap County Bank, supra, holding the common-ownership-and-control provisions in its unemployment-compensation law constitutional. In the opinion the court stated, at page 529 of 10 Wash. 2d, page 233 of 117 P. 2d:

''We cannot follow the reasoning of the Georgia court in its holding that a classification which would otherwise be valid, is unconstitutional, because some interests may be adversely affected thereby. Some persons may complain, and often with seeming reason, of every legislative classification, but dividing lines must be drawn somewhere, and the question is not whether there is in fact some discrimination, but rather whether the discrimination is justified.''

We have earlier quoted the language of the Washington Supreme Court in this case, in reply to the holding in the Benner-Coryell Lumber Company case where the Indiana Supreme Court had construed the word ''control'' as importing something more than the mere ownership of majority corporate stock.

In Unemployment Compensation Comm. v. J. M. Willis

B. & B. Shop, 219 N. C. 709, 15 S. E. 2d 4, the Supreme Court of North Carolina upheld the constitutionality of its majority-control-and-ownership clauses, after considering both the Georgia and Indiana decisions. Thereafter, similar provisions in the unemployment-compensation laws of several states were upheld in New Haven Metal & Heating Supply Co. v. Danaher, supra; Florida Industrial Commissioner v. Gary-Lockhart Drug Co., 143 Fla. 293, 196 So. 845; Wiley Motors v. Unemployment Compensation Comm., 130 N. J. Law 30, 31 A. 2d 39; Godsol v. Michigan Unemployment Compensation Comm., 302 Mich. 652, 5 N. W. 2d 519, 142 A. L. R. 910; Wayne Apartments v. Michigan Unemployment Compensation Comm., 305 Mich. 714, 9 N. W. 2d 879, and Mississippi Unemployment Compensation Comm. v. Avant, 192 Miss. 85, 4 So. 2d 296, id. 684 [appeal dismissed 316 U. S. 641, 62 S. Ct. 947, 86 L. Ed. 1727].

We are convinced that the better rule is laid down by the majority of the cases that have decided that the common-ownership-and-control clause fixes a classification which is neither arbitrary nor capricious. It seems to us that in the earlier cases the question became involved by legalistic discussion of theories of corporate entities and the rights of majority and minority stockholders. The legislative definition of an "employer" in this statute springs from realistic considerations. The legislative purpose of the act, as expressed in section 1551.08, Code of 1939, is to provide stable employment, benefits for unemployment, and the maintenance of purchasing power through periods of unemployment. That the legislature may tax for that purpose is beyond question. That the legislature may make a reasonable classification for the imposition of the tax is likewise beyond question. By its definition of the word "employer," under the common-ownership-and-control provision, the legislature has merely used as a basis the common control that exists between otherwise separate business establishments.

As said in New Haven Metal & Heating Supply Co. v. Danaher, supra, at page 222 of 128 Conn., page 388 of 21 A. 2d:

"No justification is suggested for the claim that the legislature does not have the authority to recognize the practicali-

ties of control notwithstanding the existence of corporate·entities which may be materially affected by such recognition. * * * It is only in the shadows cast by legal technicalities that a lack of common ownership and control can be discerned. Looking through these shadows to discover the substance of things, as courts are now wont to do, to the end that fraud may be defeated, obligations and responsibilities not evaded and the ends of justice subserved, one real ownership and control may be found present in the situation before us.''

The classification resting upon control is reasonable and it is calculated to effect the legislative purpose. The possibility that evasion, by splitting business establishments, is prevented is sufficient justification for the classification. The experience in Connecticut is interesting. Under the act as originally passed, it was possible for employers with five or more persons to split up their businesses and evade the tax. At its next session, in 1939, the legislature adopted the common-ownership-and-control provision as an amendment, upon the suggestion made by the administrator of the act and the statement that '' * * * certain employers were taking advantage of this loophole in the 1937 law * * *.'' See New Haven Metal & Heating Supply Co. v. Danaher, supra, 128 Conn. 213, 221, 21 A. 2d 383, 387, where the court stated that the amendment '' * * * considered in connection with the avowed purpose of its enactment, leaves no doubt that the classification prescribed by it has a fair and substantial relation to the object of the legislation.''

The fact that here the plaintiffs did not split their businesses for the purpose of tax evasion is not important. As was said in State v. Kitsap County Bank, supra, at page 527 of 10 Wash. 2d, page 232 of 117 P. 2d:

.''It is not a prerequisite to the enforcement of such an act in each individual case, that the one against whom it is sought to be enforced be actually engaged in some practice or scheme intended to accomplish an evasion of the law. The possibility that some persons may follow such evasive practices may· be sufficient justification for the classification, and the classification according to the terms of the statute being justified, it ap-

plies to all, regardless of the character of the operation or organization. * * * It cannot be held that the legislature, in failing to further refine the classification now under discussion so as to exempt therefrom persons who were not actually engaged in any evasive practice, was acting unreasonably, arbitrarily, or capriciously. The practical difficulties of devising a statute which would operate to prevent such practices, while not applying to other cases, and the expense involved in connection with the administration of such refined legislation, afford ample justification for the broad inclusive features of subsection (4)."

We hold that section 1551.25F4, Code of 1939, is a valid constitutional exercise of legislative power and that the classification contained therein has a fair and substantial relation to the object of the legislation. The decision of the trial court is affirmed.—Affirmed.

GARFIELD, HALE, MILLER, BLISS, and OLIVER, JJ., concur.