BURLINGTON TRUCK LINES, Inc., Appellee, v. IOWA EMPLOYMENT
SECURITY COMMISSION, Appellant.

No. 47248.

(Reported in 32 N. W. 2d 792)

JUNE 15, 1948.

F. D. Riley, of Des Moines, for appellant.

John Hale, of Burlington, and Russell B. James, of Chicago, for appellee.

SMITH, J.—We have here to construe the Iowa Employment Security Law in its relation to certain stipulated facts. The self-avowed purpose of the Act is to achieve social security "by encouraging employers to provide more stable employment *and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment.*" Section 96.2, Iowa Code, 1946. (Italics supplied.)

We are not presently concerned with the elaborate benefit provisions of the statute and the machinery for determining rights of claimants. It is sufficient to say the benefits are payable out of a state unemployment compensation fund to be ad-

ministered by defendant, Commission. The fund is made up of contributions from employers, plus any collections of interest, fines and penalties and accumulation of interest upon investment of the fund itself. Code section 96.9, subsection 1. Contributions are not deductible "in whole or in part" from wages. Laws of Fifty-second General Assembly, chapter 74, section 1(d).

The rate of contribution by employers since December 31, 1940, is fixed at 2.7 per cent of annual wages paid *except as may be otherwise prescribed in subsection 3 of this section.* Code section 96.7, subsection 2(d). Said subsection 3 requires the commission to keep separate account for each employer and after an experimental period of three years of coverage his rate, of contribution is reviewable downward, according to a prescribed ratio formula, whenever the total contributions paid to said account exceed total benefits charged against it. Code section 96.7, subsection 3(c), (d); Laws of Fifty-second General Assembly, chapter 74, section 3.

Plaintiff here commenced business June 1, 1946. As of that date it took over the business of the Truck Division of the Burlington Transportation Company. Prior to that time the latter had operated a Truck Division and a Bus Division and had paid contribution to the unemployment compensation fund on both as a single employing unit and had become entitled to a contribution rate of .9 per cent. The two operations, however, were entirely distinct with offices in different cities, and with separate management, personnel, bookkeeping, and records.

Plaintiff is now claiming the benefit of this .9 per cent rate. Its claim was disallowed by defendant, Commission. However, upon appeal to the district court (under Code section 96.7, subsection 6) the ruling of the defendant was reversed and this is an appeal by defendant from the decree of the district court which ordered defendant to reduce the rate of assessment from 2.7 per cent to .9 per cent and to refund to plaintiff all contributions in excess of such reduced rate.

I. Code section 96.7, subsection 3(b), provides:

"b. In any case in which the enterprise or business for which contributions have been paid has been sold or otherwise

transferred to a subsequent employing unit, or in any case in which one or more employing units have been reorganized or merged into a single employing unit and the successor employer continues to operate such enterprise, such successor employer shall assume the position of the predecessor employer or employers with respect to such predecessors' pay rolls, contributions, accounts and contribution rates to the same extent as if there had been no change in the ownership or control of such enterprise or business.

"In determining each employer's rate of contribution for the calendar year 1945, and for each year thereafter, such employer shall be given full credit for the pay rolls, contributions, accounts and contribution rates of his predecessor employer or employers to the same extent as if there had been no change in the organization or the ownership of the business."

Defendant contends the quoted provision does not cover the present situation; that there was not here a transfer of *all* the business of the Burlington Transportation Company since it retained and is still operating its Bus Division as an employing unit and reporting as such to defendant and is still allowed the .9 per cent rate. It is stipulated however that plaintiff's employment record is such as also to entitle it to that rate if the Truck Division had been treated as a separate employing unit from the outset.

Both plaintiff and Burlington Transportation Company are wholly owned subsidiaries of the Chicago, Burlington & Quincy Railroad Company. When plaintiff took over the Truck Division all its officers, agents and employees remained identical with the officers, agents and employees theretofore employed by the Burlington Transportation Company, Truck Division, and there was no change in operating policies or in personnel. Then pending operations were continued and completed without interruption.

Plaintiff submits exhibits compiled from the records of the defendant, Commission, showing the annual earnings of employees as reported and contributions paid, separated between Truck Division and Bus Division, from January 1, 1936, to

May 31, 1946; and in similar manner the benefits paid and charged to the account during that period.

The figures demonstrate what had already been stipulated, viz.: that if the Truck Division be considered as an employing unit throughout the entire period preceding its transfer to plaintiff, both it, and plaintiff as successor employer, would be entitled to the .9 per cent rate.

The statute, as already stated, gives the employer (after a trial stabilizing period of three years during which his rate is 2.7 per cent of pay roll) the benefit of a lower rate if the amount of his contributions exceeds the total benefits charged to his account, the extent of reduction depending on the ratio which the excess bears to his average annual pay roll. Code section 96.7, subsection 3(d). If the ratio equals or exceeds 10 per cent but is less than 12½ per cent, the rate allowed is .9 per cent. The evident purpose is to provide (so far as possible by the light of past experience) that there will be ample funds for payment of future benefits, without exacting unneeded contributions.

Subsection 3(b) (previously quoted) must be held to be designed to co-ordinate with this purpose. If a business changes hands during or after the three-year period but continues to operate, there is no need for a new three-year experimental period to commence. If changes in pay rolls, contributions and benefits occur at the end of the three-year period, requiring a higher rate, adjustments may be made, just as they would have been made if there had been no transfer of ownership.

We think this is true whether all the business, or only one branch or part thereof, is transferred. It is not essential to the purpose of Code section 96.7, subsection 3(b), that the word "all" be read into the statute. That clear purpose is to avoid requiring the commencement of a new stabilizing period where there is continuity of operation in spite of the transfer. If the subject of transfer be (as is the case here) such an independent or separate business or enterprise as to have an employer-employee experience, separate or separable from that of the other branches or businesses operated by the owner, its transfer constitutes transfer of an "enterprise or business" within the meaning of section 96.7, subsection 3(b).

The Burlington Transportation Company had operated two such enterprises or businesses. They were entirely distinct with offices in different cities and with separate management, personnel, bookkeeping and records. The company therefore when it transferred one did not transfer *part* of its business, but *one* of its businesses.

That it had reported both its Truck and Bus Divisions as one unit does not seem significant. They would have been treated as one anyway if such treatment had been necessary to bring the company within the operation of the law as an employer of eight or more persons. Code section 96.19, subsection 6(a). See Mount Vernon Bk. & Tr. Co. v. Iowa Emp. Sec. Comm., 233 Iowa 1165, 11 N. W. 2d 402.

II. What we have heretofore said has assumed there was here a change of "employing unit" within the meaning of Code section 96.7, subsection 3(b). The term "employing unit" is defined in Code section 96.19, subsection 5, in effect, as an individual or organization having "in its employ one or more individuals performing services for it." An "employing unit" becomes an "employer" when it has a prescribed number of employees as provided by Code section 96.19, subsection 6.

We held in Mount Vernon Bk. & Tr. Co. v. Iowa Emp. Sec. Comm., supra, at page 1167 of 233 Iowa, page 403 of 11 N. W. 2d, that this law (then chapter 77.2, Code, 1939) provides "what amounts to a tax upon employers * * * to provide benefits for periods of unemployment." We also held in that case that under the statutory definition of "employer" two separate banking corporations, in different communities, but controlled by the same interests would, under the statutory definition (then section 1551.25F4, Code, 1939, now Code section 96.19, subsection 6d), be treated as one employer for the purpose of determining whether the combined number of employees would bring it within the provisions of the law requiring contribution to the unemployment compensation fund.

We find no pertinent changes in the statute since that decision. We have here nominal predecessor and successor corporate employers, both *completely owned* by the Chicago, Burlington & Quincy Railroad Company. Each still operates a part

of the business formerly operated by one alone. Each is controlled "by the same interests" within the clear meaning of the cited statute. Under the statute and the Mount Vernon Bank decision there is however but one employer—one taxpayer—at least for the purpose of considering the combined number of their employees, if necessary to invoke the provisions of the law.

We think the transfer of the Truck Division to plaintiff resulted in no real change of employing unit or of "employer" for the purposes of the Employment Security Law. If separate corporate employers, "controlled by the same interests" are considered to constitute but one employer for the purpose of pooling their employees *to make them subject to the law* (as held in the cited Mount Vernon Bank case) they must continue to be so considered *in order to determine to what contribution rate they are entitled under the law.* This conclusion seems inescapable. There was, on June 1, 1946, no change of operating policies or of officers, agents or employees. So far as this Security Law is concerned it was a mere paper transaction. If either or both plaintiff and the Burlington Transportation Company had had fewer than eight employees defendant would have insisted on treating them as one, *in order to assess the tax.* Surely the *rate* of the tax must be fixed by the same standard.

In the Mount Vernon Bank case the two banking corporations were distinct corporate entities with entirely different officers except that the same person was vice-president of each. But we held both corporations were "controlled by the same interests" through ownership of a majority of the stock of each by the same persons or interests. Here we have *full,* not mere *majority,* ownership of the stock of each corporation in the railroad company. We have identity of "officers, agents and employees" of the new corporation with the "officers, agents and employees" of the Burlington Transportation Company, Truck Division.

The various provisions of the law must be construed together. Section 96.7, subsection 3(b), which we have been considering, is designed to permit continuity of contribution rate based upon probable continuity of operational experience, even though there is a change of employing unit by transfer from one to another. Where, as here, both employing units are owned

and controlled by the same interests, continuity of employment experience is made even more certain than if there was no such common ownership and control.

In Code section 96.19, subsection 5, it is provided:

"All individuals performing services within this state for any employing unit which maintains two or more separate establishments within this state shall be deemed to be employed by a single employing unit *for all the purposes of this chapter.*" (Italics supplied.)

We must conclude there is shown in the instant case a transaction or situation which involved no "new employer lacking the three years of experience required by" Code section 96.7, subsection 3(c). (Appellant's argument.) On the contrary, in legal effect, there was such continuity of ownership and operation as to render unnecessary the commencement of a new stabilizing or experimental period.

III. Defendant, Commission, argues that in order to comply with Federal standards the word "all" must be implied in Code section 96.7, subsection 3(b) (quoted ante) making it seem as if it read: "In any case in which *all* the enterprise or business for which contributions have been paid has been sold or otherwise transferred to a subsequent employing unit," etc.

It is not necessary to go into all the details of the tie-in of our state Employment Security Law with the Federal Social Security Act. Our Code section 96.11, subsection 11, directs the Commission in the administration of the law to "co-operate *to the fullest extent consistent with the provisions of this chapter,* with the federal social security board." (Italics supplied.)

The Federal Act imposes an excise tax of 3 per cent of total wages paid each year by employers of eight or more. 26 U.S.C.A., sections 1600, 1607. But the employer-taxpayer is permitted to credit against this tax the amount of his contribution to the state unemployment fund to the extent of 90 per cent of said 3 per cent tax. 26 U.S.C.A., section 1601(a).

The Federal Act also permits so-called "additional credit" so that the taxpayer may have his full 90 per cent credit though his contribution to the state fund be less than 2.7 per

cent of wages paid, where such reduced contribution is allowed under the state law, based on "experience with respect to unemployment * * * during not less than the three consecutive years." 26 U.S.C.A., sections 1601(b), 1602(a)(1).

The controversy in the instant case involves the provision of our state law which allows such reduction of contribution to a transferee of an enterprise or business where the right to it has been previously earned by the transferor.

The Federal Social Security Board, in its "guide for State Employment Security Commission" (section 2620) has provided that "in cases of *total transfers* [italics supplied] the allowance of reduced rates of contribution * * * will raise no question of compliance with section 1602 of the Internal Revenue Code" where the state agency adopts a procedure which gives the transferee or "acquiring employer" the contribution rate then applicable to the transferring employer.

Defendant here relies on the words "total transfers" as the basis for its contention that the word "all" must be read into our Code section 96.7, subsection 3(b), in order to meet Federal standards. The argument is not convincing. What we have hereinbefore said as to the purpose and basis of our statutory provision for reduction of contribution rate is equally applicable here.

We cannot assume the purpose of the Federal Act or the Social Security Board in administering it is different from the purpose of our own statute. That purpose, as we have pointed out, is to avoid the accumulation of unneeded funds while making certain there will be sufficient to meet probable future benefit demands. The expedient contemplated by both Federal and state statutes to this end is an experimental period of three years followed by subsequent periodical comparisons to insure that the contribution rate is sufficient to care for subsequently arising demands for unemployment benefits.

It cannot make any difference to the desired purpose whether the experience upon which the rate is based is that of transferor or of transferee. If in either case subsequent experience shows need for change in rate such change is provided for. The words "total transfers" as used in the Guide are not in-

consistent with our interpretation of the language of the Iowa statute. There *was* here, in fact, a "total transfer" of the Truck Division of the Burlington Transportation Company.

Nor do we find any language in the Federal Act that militates against this interpretation. It permits the additional credit so long as the state law bases the reduced rate of contribution on the basis of "experience with respect to unemployment or other factors bearing a direct relation to unemployment risk during not less than the three consecutive years." 26 U.S.C.A., section 1602(a)(1). There is no suggestion that the experience must be that of one continuous employer or that a successor employer may not "inherit" the experience of his predecessor where he takes over and continues to operate a business or enterprise in which such experience is separate or separable from that of another business operated by the predecessor.

IV. When the words of a statute are explicit they of course govern. But where the language is such that the meaning or its application in a given case cannot be determined with certainty it is proper to take into consideration the object or purpose of the act. The rule is elementary and requires no citation of authority, but see Elks v. Conn, 186 Iowa 48, 54, 172 N. W. 173; Coggeshall v. City of Des Moines, 138 Iowa 730, 733, 735, 117 N. W. 309, 128 Am. St. Rep. 221. The object of this law is clear upon its face. That purpose could not be served by interpreting it so narrowly as to deny plaintiff the benefit of the experience of the business prior to its transfer to plaintiff.

It is contended by defendant the legislative history of the statute (section 96.7, subsection 3(b)) is such as to require the interpretation sought to be placed on it. The showing here, however, is too meager to be helpful. The fact that the original draft of a bill contains language that is omitted in the final draft does not of necessity mean that the intent of the omitted portion is not still embodied in the bill as passed. The language may have been omitted because deemed unnecessary to a clear expression of the intent. Its omission is as consistent with that theory as with one that assumes the intent itself

was abandoned. See Giragi v. Moore, 48 Ariz. 33, 58 P. 2d 1249, 1252, 110 A. L. R. 314; on rehearing 49 Ariz. 74, 64 P. 2d 819, 110 A. L. R. 320. This is especially true where (as here) the final draft is fairly susceptible of an interpretation consonant with the thought of the omitted part.

The language of both the Federal Social Security Act and of our own Employment Security Law is (we sometimes think, needlessly) involved. It follows a pattern that has become somewhat familiar in latter day social legislation. We have endeavored to clarify it by translation into simpler language rather than quote it verbatim.

We think the decision of the trial court is right and it is affirmed.—Affirmed.

MULRONEY, C. J., and OLIVER, BLISS, GARFIELD, MANTZ, and HAYS, JJ., concur.

HALE, J., takes no part.