Dahl Enterprises, appellant, v. Iowa Employment Security Commission, appellee.

No. 49275.

(Reported in 86 N.W.2d 922)

December 17, 1957.

Swift & Murray, of Des Moines, for appellant.

Don G. Allen, of Des Moines, for appellee.

Wennerstrum, J.—This appeal has developed by reason of the imposition of a contribution rate by the Iowa Employment Security Commission's accounting department against Dahl Enterprises, a corporation, for the calendar year 1955 higher than the corporation claims should be imposed. The commission de-

nied the request for a lower rate of computation and Dahl Enterprises, Inc., thereafter appealed to the district court. Section 96.7(6a–c), 1954 Code. The court sustained the ruling of the commission and the plaintiff has appealed to this court. Section 96.7(6c).

The records before the commission and the trial court are not in dispute. They disclose the following facts: Dahl Food Enterprises, an Iowa Corporation, commenced business in June 1950 in connection with the operation of a super market in the northwest part of Des Moines. This corporation was given an account number by the commission and thereafter a low contribution rate for it was established. It will hereinafter be referred to as the first corporation.

Dahl Enterprises, the plaintiff herein, was organized as a corporation in 1951 for the purpose of operating a retail super market at Thirty-fifth and Ingersoll Avenue in Des Moines. It will be considered as the second corporation in our subsequent comments. A separate pay roll was not established in connection with the operation of the Ingersoll market until April 14, 1952. W. T. Dahl has been the president and treasurer of both corporations since their organization and R. W. Byerly has been the vice-president and secretary of these two companies. Dahl and Byerly own all the outstanding stock of the first corporation and 75% of the outstanding stock of the second corporation. They apparently are the sole directors and operators of these two corporations.

Dahl and Byerly have supervised the management of both the corporations and have so exercised control since each of them began to carry on its activities. Both companies use the same trucks and motor equipment in transporting merchandise to and from one place of business to the other. Both Dahl and Byerly, at all times since the two corporations began their operations, have held controlling interest in each corporation and have held identical proportionate amounts of stock in the two corporate enterprises. It is also shown since the establishment of the second corporation and the creation of a separate pay roll, certain of the employees of the second corporation also have been employees of Dahl Food Enterprises and thus have been on the pay rolls of the two corporations.

It is the contention of the second corporation that by reason of the proportionate similarity of the stockholdings of Dahl and Byerly in the two corporations the contribution rate assessed against it should be the same as that applied to the first corporation. This latter one had earned and been assigned a contribution rate of .225% for the year 1955 while Dahl Enterprises was assessed a contribution rate of 2.7% for the same year. Stating the situation in a converse manner the Iowa Employment Security Commission maintains the second corporation is a new employer without the required experience which would entitle it to a lower contribution merit tax rate.

It is also asserted by the commission inasmuch as Dahl Enterprises is a new corporation and there had been no sale, transfer, reorganization or merger, as contemplated by the applicable statute, this second corporation is not entitled to the tax rate of the first corporation. The commission further maintains the record does not disclose a predecessor or successor in interest, as contemplated by the statute, which would entitle the second company to the lower tax rate of the older of the two corporations.

In order one may understand the problem before us for consideration we shall set forth the applicable statutes. Our statutory references are to the 1954 Code.

Section 96.7(3b, c). "Future rates based on benefit experience. * * * b. In any case in which the enterprise or business for which contributions have been paid has been sold or otherwise transferred to a subsequent employing unit, or in any case in which one or more employing units have been reorganized or merged into a single employing unit and the successor employer continues to operate such enterprise, such successor employer shall assume the position of the predecessor employer or employers with respect to such predecessors' pay rolls, contributions, accounts and contribution rates to the same extent as if there had been no change in the ownership or control of such enterprise or business.

"In determining each employer's rate of contribution for the calendar year 1945, and for each year thereafter, such employer shall be given full credit for the pay rolls, contributions, accounts and contribution rates of his predecessor employer or employers to the same extent as if there had been no change in

the organization or the ownership of the business. Provided, that in any case in which such sale, transfer, merger or reorganization has taken place in any year after the predecessor employer's rate of contribution (hereafter called rate) has been determined for such year the employer's rate for the remainder of such year, shall, upon his application to the commission be determined in the following manner: (1) * * * (2) * * *

"c. Each employer's rate shall be two and seven-tenths percent except as otherwise provided in the preceding and further provisions of this section. No reduced rate shall be granted to any employer, until there shall have been three consecutive calendar years of coverage after such employer and the predecessor owner of such enterprise if any first became liable for contributions and immediately preceding the computation date. * * *."

Section 96.19(5). " 'Employing unit' means any individual or type of organization, including any partnership, association, trust, estate, joint stock company, insurance company or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee or successor thereof, or the legal representative of a deceased person, which has or subsequent to January 1, 1936, had in its employ one or more individuals performing services for it within this state. All individuals performing services within this state for any employing unit which maintains two or more separate establishments within this state shall be deemed to be employed by a single employing unit for all the purposes of this chapter. * * *."

Section 96.19(6d). " 'Employer' means: * * *

"d. Any employing unit which together with one or more other employing units, is owned or controlled (by legally enforceable means or otherwise) directly or indirectly by the same interests, or which owns or controls one or more other employing units (by legally enforceable means or otherwise), and which, if treated as a single unit with such other employing unit, would be an employer under paragraph 'a' of this subsection."

I. We have previously passed on certain phases of the Iowa Employment Security Act. We shall comment on these cases inasmuch as they have been cited to us as applicable and controlling in this appeal.

In the case of Mount Vernon Bank & Trust Co. v. Iowa Employment Security Comm., 233 Iowa 1165, 11 N.W.2d 402, we gave consideration to whether a tax should be imposed upon two separate banking corporations and whether employment security tax payments should be required of the two institutions. It was there held that under the statutory definition of employer these two separate banking corporations in different but near-by communities and which corporations were controlled by the same interest would under what is now section 96.19(6d) be treated as one employer. In the cited case neither of the two banking institutions had eight employees but together they did. We held that inasmuch as the banking institutions were controlled by the same interests the combined number of employees should be considered and thus bring both banks within the provisions of the law requiring contributions to the unemployment compensation fund.

It is the contention of Dahl Enterprises, the plaintiff, that inasmuch as the two Dahl corporations are controlled by the same interests the rate of tax should be the same. It is the claim of the plaintiff that if, as in the Mount Vernon Bank case, two corporations are considered one when controlled by the same interests for the imposition of a tax the same reasoning should be followed and the same conclusion should be reached in determining the rate of tax. We shall comment upon this contention later.

In the case of Burlington Truck Lines v. Iowa Employment Security Comm., 239 Iowa 752, 754, 758, 32 N.W.2d 792, 793, we gave consideration to the question whether on the sale and transfer of a business the succeeding enterprise should have the benefit of the lower contribution rate of the prior owner of a business. The pertinent facts in that case are here set forth:

"Plaintiff here commenced business June 1, 1946. As of that date it took over the business of the Truck Division of the Burlington Transportation Company. Prior to that time the latter had operated a Truck Division and a Bus Division and had paid contribution to the unemployment compensation fund on both as a single employing unit and had become entitled to a contribution rate of .9%. The two operations, however, were entirely distinct with offices in different cities, and with separate management, personnel, bookkeeping, and records.

"Plaintiff is now claiming the benefit of this .9% rate. Its claim was disallowed by defendant, Commission. However, upon appeal to the district court (under Code section 96.7, subsection 6) the ruling of the defendant was reversed and this is an appeal by defendant from the decree of the district court which ordered defendant to reduce the rate of assessment from 2.7% to .9% and to refund to plaintiff all contributions in excess of such reduced rate."

We there further stated: "We think the transfer of the Truck Division to plaintiff resulted in no real change of employing unit or of 'employer' for the purposes of the Employment Security Law. If separate corporate employers, 'controlled by the same interests' are considered to constitute but one employer for the purpose of pooling their employees to make them subject to the law (as held in the cited Mount Vernon Bank case) they must continue to be so considered in order to determine to what contribution rate they are entitled under the law. This conclusion seems inescapable. There was, on June 1, 1946, no change of operating policies or of officers, agents or employees. So far as this Security Law is concerned it was a mere paper transaction. If either or both plaintiff and the Burlington Transportation Company had had fewer than eight employees defendant would have insisted on treating them as one, in order to assess the tax. Surely the rate of the tax must be fixed by the same standard."

We do not believe either of the two previously referred to cases is applicable to the present situation. In the Mount Vernon Bank case we held the fact the same interests controlled the two banking institutions was determinative of the question whether a tax at all should be assessed. The rate of assessment was not considered. In the Burlington Lines case this court gave consideration to the rate of tax to be collected by a succeeding employer. There was in this latter case a sale and transfer to a subsequent employing unit. That is not the situation in the present case. There are some statements in the Burlington Lines case which give support to the contentions of the plaintiff herein but we should keep in mind the following differences. As required by section 96.7(3b), 1954 Code, there was no sale of any property by the first corporation to the second one. The new corporation

was not the result of a reorganization or merger into a single employing unit with the successor employer continuing to operate the new venture. The new enterprise was not a successor to a predecessor employer. By reason of these facts we are unable to hold that the new corporation has any statutory right to claim the lower contribution tax rate of the first one.

It should be kept in mind in the Mount Vernon Bank case we were dealing with the question whether the two banks were employers under the statute. And we there determined inasmuch as the two banking institutions were controlled by the same interests they were collectively an "employing unit" for the determination whether any contribution tax should be collected. We were not considering what the rate of tax should be. As bearing on the situation somewhat similar to the instant case it was stated in Ned's Auto Supply Co. v. Michigan Unemployment Compensation Comm., 313 Mich. 66, 76, 20 N.W.2d 813, 816, as follows: "In other words, the fact that the commission, properly or improperly, allowed a combining of accounts in 1938 for the purpose of holding that plaintiff corporations were 'subject employers' under section 41 of the act is not determinative of the question before us relating to combining experience records of the partnership and successor corporations under section 22, as amended in 1941."

And in the Burlington Lines case we were considering the applicability of a different statute (now section 96.7(3b)) pertaining to a sale and transfer of a separate unit of a predecessor owner.

II. We have been referred to authorities from other jurisdictions which bear somewhat upon the problem we have for consideration. The facts in these cases are not similar to the situation in the present case but we believe they indicate a sound determination of somewhat similar conditions. In Ned's Auto Supply Co. v. Michigan Unemployment Compensation Comm. (1945), 313 Mich. 66, 20 N.W.2d 813, we find a situation wherein five individuals, each owning a one-fifth interest, conducted a co-partnership business under the name of Ned's Auto Supply Company. It was engaged in the operation of automobile service stations and in the sale of automotive accessories and in household appliances at wholesale and retail. The wholesale branch of the

business was carried on under the name of Merchants Auto Supply Company. This latter business was never considered as a separate enterprise and its profits became a part of the partnership income. Later these two business ventures were incorporated as two separate corporations. The partnership was dissolved.

In 1942 a dispute arose regarding the rate to be used in determining the amount of contribution which each of the corporations was required to pay for that year. The commission denied the contribution rate for 1942 should be three per cent as provided in section 19 of the Michigan Unemployment statute. The Supreme Court of Michigan, in the cited case, confirmed the circuit court which had approved the contribution rate imposed by the unemployment compensation commission. It was there held at pages 76, 77, of 313 Mich., page 816 of 20 N.W.2d:

· · "It should be kept in mind that there was only one partnership prior to September 1, 1938, and that approximately two thirds of its assets were transferred to plaintiff corporation, Ned's Auto Supply Company, and approximately one third to plaintiff corporation, Merchants Auto Supply Company. Thereafter, the assets were owned and the businesses conducted by two separate and distinct legal entities. Under section 22(a), the experience records of the partnership and the succeeding two corporations could be combined for the purpose of determining the rate of contribution for 1942, only if the commission found that one of the following circumstances existed: (1) That plaintiff corporations, as 'an employer', meaning a single employer, had acquired the organization, trade or business, or substantially all of the assets, and had continued 'substantially all the employing enterprises', of the predecessor partnership; or (2) that plaintiff corporations, as successors to the partnership and as a 'single employing unit', continued substantially all the employing enterprises of the partnership; or (3) that plaintiff corporations, as a 'single employing unit', continued substantially all the employing enterprises of '2 or more' predecessor employing units.

"It is clear that the two corporations could not qualify as a single employing unit under the provisions of said section 22(a) (1), (2), and (3), unless their corporate entities were disregarded. Plaintiffs argue that because the five partners continued

as owners of the corporate stock of the two corporations and as directors and officers thereof, the corporate entities should be disregarded and they should be considered as a single employing unit. We cannot agree with this argument, because plaintiff corporations are two separate and distinct legal entities and, therefore, two separate employers."

Other authorities which bear upon the question here under consideration and which support our previously announced conclusions are El Queeno Distributing Co. v. Christgau (1946), 221 Minn. 197, 21 N.W.2d 601; State v. Dallas Liquor Warehouse (1949), 147 Tex. 495, 217 S.W.2d 654; Surgical Supply Center v. Industrial Commission (1950), 118 Utah 632, 223 P.2d 593; Hillside Holding Corp. v. Division of Employment Security (1954), 32 N. J. Super. 57, 107 A.2d 717.

We are convinced the trial court was correct in sustaining the conclusions and holdings of the Iowa Employment Security Commission in not giving a lower contribution rate to Dahl Enterprises. We therefore affirm.—Affirmed.

HAYS, C. J., and BLISS, GARFIELD, SMITH, THOMPSON, and PETERSON, JJ., concur.

LARSON and OLIVER, JJ., dissent.

LARSON, J. (dissenting)—I am unable to agree with the majority, for I feel we have committed ourselves to the rule of disregarding the fact that certain joint enterprises have separate corporate entities as far as the Security law is concerned. In both Mount Vernon Bank & Trust Co. v. Iowa Employment Security Comm., 233 Iowa 1165, 11 N.W.2d 402, and Burlington Truck Lines v. Iowa Employment Security Comm., 239 Iowa 752, 754, 32 N.W.2d 792, we have considered other facts as conclusive in assessing tax liability for employees, and place the emphasis on whether the corporations are controlled by the same interests, plus an inquiry as to whether there is any real difference in the employing unit. It seems quite unfair and illogical to say we disregard corporate entities to get sufficient employees under the law and then consider them separately to assess a different rate

of contribution for each. I would, under the facts of this case, treat the entities as one unit and reverse the decision of the commission and the district court.

OLIVER, J., joins in this dissent.