[No. S030724. Dec. 23, 1993.]

NICHOLAS GIKAS, Plaintiff and Appellant, v.
FRANK S. ZOLIN, as Director, etc., Defendant and Respondent.

844

**COUNSEL**

Michael D. McGlinn for Plaintiff and Appellant.

Paul H. Neuharth, Jr., and Ed Kuwatch as Amici Curiae on behalf of Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Henry G. Ullerich, Assistant Attorney General, Melvin R. Segal, Martin H. Milas and Mary Horst, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

ARABIAN. J.—Alarmed by the death and destruction that drunk drivers cruelly perpetrate upon our highways, the Legislature has empowered the Department of Motor Vehicles (DMV) to promptly suspend the drivers' licenses of those who drive while intoxicated. We are asked to decide whether a determination in a criminal prosecution that a defendant had been

illegally arrested for driving under the influence precludes relitigation of the same question in the DMV's administrative proceeding to suspend the license. We conclude it does not.

## I. FACTS

In the early morning hours of July 20, 1990, California Highway Patrol Officer Kenneth Jolly arrested appellant, Nicholas Gikas, for driving while under the influence of alcohol. A blood test showed that appellant's blood-alcohol level was 0.10 percent. Officer Jolly served appellant with an "administrative per se order of suspension," giving appellant a 45-day driving license, but notifying him that his license would be suspended after that time because of the results of the blood test.

Appellant moved to suppress evidence in the criminal proceeding. Officer Jolly and a defense investigator testified at the hearing. The municipal court ruled that the original stop and detention were unreasonable, and granted the motion. The People, represented by the San Diego City Attorney, indicated they were unable to proceed, and the criminal case was dismissed. The People did not appeal.

Thereafter, the DMV conducted an administrative hearing to consider suspending appellant's driver's license because of the July 20, 1990, blood test. Relying on the municipal court's grant of the suppression motion and the subsequent dismissal of the criminal charges, appellant argued that the DMV was collaterally estopped from relitigating the legality of his arrest. The DMV rejected the claim, and suspended appellant's driver's license for four months. It later denied relief on administrative review.

Appellant filed a petition for writ of administrative mandamus in the superior court. The court denied the petition, finding that the DMV "is not collaterally estopped from determining that plaintiff's stop and detention was lawful." The Court of Appeal stayed the suspension pending appeal and, by a two-to-one vote, with Justice Huffman dissenting, reversed. It found that the "DMV is collaterally estopped from relitigating the cited issues [essentially the lawfulness of the arrest] which were necessarily resolved by the municipal court decision to grant the suppression motion." Because of this holding, the court did not decide appellant's alternate contention, that the dismissal of the criminal charges was an "acquitt[al]" that also precluded the administrative proceeding under Vehicle Code section 13353.2, subdivision (e).

We granted the DMV's petition for review.

## II. DISCUSSION

### A. *Introduction*

It is a criminal offense to drive while under the influence of alcohol or a drug, or to drive with 0.08 percent or more, by weight, of alcohol in the blood. (Veh. Code, § 23152, subds. (a) and (b); see also Veh. Code, § 23153 [similar, but also involving bodily injury].)[1] In addition to criminal sanctions, the Legislature has established administrative procedures whereby the DMV may suspend a person's driver's license for driving under the influence or with a specified blood-alcohol level.

The DMV has long been authorized to suspend drivers' licenses of persons *convicted* of specified alcohol related driving offenses, or of persons who refused to submit to a chemical test to determine their blood-alcohol level. (E.g., §§ 13352, 13353.) At issue here is legislation enacted in 1989, operative July 1, 1990, designed to allow suspension of drivers' licenses *before* conviction for driving with a blood-alcohol level of 0.10 percent or more, later reduced to 0.08 percent. (Stats. 1989, ch. 1460, p. 6501; Stats. 1990, ch. 431.) "Similar laws providing for administrative license suspension or revocation, sometimes called 'administrative per se' laws, have been enacted and are in effect in at least 23 states, and are reported to be an effective deterrent to driving while under the influence of alcohol or drugs. [Citation.]" (*Peretto* v. *Department of Motor Vehicles* (1991) 235 Cal.App.3d 449, 452 [1 Cal.Rptr.2d 392]; see also, generally, *id.* at pp. 452-453 and *Claxton* v. *Zolin* (1992) 8 Cal.App.4th 553, 558-559 [10 Cal.Rptr.2d 319].)

Under this legislation, when a person is arrested for driving under the influence and is determined to have a prohibited blood-alcohol level, the arresting officer or the DMV serves the person with a "notice of the order of suspension." (§§ 13353.2, subds. (b) & (c), 23158.5, subds. (a) & (b).) The notice informs the person that his or her driver's license will be suspended 45 days from the date of service, states the reason and statutory grounds for the suspension, and explains the person's right to seek an administrative hearing. (§§ 13353.2, subd. (c), 13353.3, subd. (a).) If the arresting officer serves the notice, the officer also confiscates the person's driver's license, and issues a 45-day temporary license. (§ 23158.5, subd. (b).) The period of suspension is four months for a person with no prior record. (§ 13353.3, subd. (b)(1).)

The DMV automatically reviews the suspension order to determine, by a preponderance of the evidence, whether: (1) the arresting officer had reasonable cause to believe the person was driving in violation of section 23152 or

---

[1] All statutory references are to the Vehicle Code unless otherwise indicated.

section 23153; (2) the person was placed under arrest; and (3) the person was driving with 0.08 percent or more, by weight, of alcohol in the blood. (§ 13557.) The determination is based upon the officer's report and any evidence accompanying the report. (§ 13557, subd. (a).) The person may request a hearing with the DMV limited to these issues, at which additional evidence may be presented. Upon a timely request, the hearing must be held before the effective date of the order of suspension. (§ 13558.) The person may seek judicial review of an adverse decision. (§ 13559.) None of these review proceedings have a "collateral estoppel effect on a subsequent criminal prosecution" or "preclude litigation of those same facts in the criminal proceeding." (§§ 13557, subd. (f), 13558, subd. (g), 13559, subd. (b).)

The express legislative purposes of the administrative suspension procedure are: (1) to provide safety to persons using the highways by quickly suspending the driving privilege of persons who drive with excessive blood-alcohol levels; (2) to guard against erroneous deprivation by providing a prompt administrative review of the suspension; and (3) to place no restriction on the ability of a prosecutor to pursue related criminal actions. (Stats. 1989, ch. 1460, § 1, pp. 6501-6502; *Agresti* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 599, 603 [7 Cal.Rptr.2d 353].)

The legislative history reveals that "[t]he need for the administrative per se statutes arose from the fact that '[t]he legal process leading to imposition of a suspension sometimes [took] years from the time of arrest.' [Citation.] 'Many drivers with high chemical test results fail[ed] to have sanctions taken against their driving privilege because of reduction in charges as the result of "plea-bargaining" or pre-trial diversion programs.' [Citation.] ■ In enacting the administrative per se law, the Legislature intended to establish 'an expedited driver's license suspension system' [citation] that would 'reduce court delays. The suspension will be swift and certain and will be more effective as a deterrent . . . .' [Citation.]" (*Bell* v. *Department of Motor Vehicles* (1992) 11 Cal.App.4th 304, 312 [13 Cal.Rptr.2d 830].)

■ "[T]he Legislature, in enacting these statutes, contemplated two processes—one involving court proceedings and criminal in nature, the other involving administrative proceedings and civil in nature; and that these processes are, for the most part, intended to operate independently of each other and to provide for different dispositions." (*Robertson* v. *Department of Motor Vehicles* (1992) 7 Cal.App.4th 938, 947 [9 Cal.Rptr.2d 319].) However, as relevant here, one important requirement is common to both. For the incriminating evidence to be admissible in the criminal proceeding, or for the DMV to suspend the driver's license, the underlying arrest must have been lawful. (§ 13557, subd. (b)(2)(A); *Agresti* v. *Department of Motor*

*Vehicles, supra,* 5 Cal.App.4th at p. 607; see also *Mercer* v. *Department of Motor Vehicles* (1991) 53 Cal.3d 753, 760 [280 Cal.Rptr. 745, 809 P.2d 404]; *Zapata* v. *Department of Motor Vehicles* (1991) 2 Cal.App.4th 108, 111 [2 Cal.Rptr.2d 855]; and *Music* v. *Department of Motor Vehicles* (1990) 221 Cal.App.3d 841, 847 [270 Cal.Rptr. 692] [interpreting similar statutory language in § 13353, involving the "implied consent" law].)

■ In the criminal proceeding of this case, the court concluded that the arrest was unlawful. The precise question confronting us is whether that determination precludes relitigation of the issue in the administrative proceeding.

Especially pertinent to this inquiry is section 13353.2. Subdivision (a) of that section provides: "The [DMV] shall immediately suspend the privilege of any person to operate a motor vehicle if the person was driving a motor vehicle when the person had 0.08 percent or more, by weight, of alcohol in his or her blood."

Subdivision (e) of section 13353.2 provides in pertinent part: "The determination of the facts in subdivision (a) is a civil matter which is independent of the determination of the person's guilt or innocence, shall have no collateral estoppel effect on a subsequent criminal prosecution, and shall not preclude the litigation of the same or similar facts in the criminal proceeding. If a person is *acquitted* of criminal charges relating to a determination of facts under subdivision (a), the [DMV] shall immediately reinstate the person's privilege to operate a motor vehicle if the [DMV] has suspended it administratively pursuant to subdivision (a), and the [DMV] shall return or reissue for the remaining term any driver's license which has been taken from the person pursuant to Section 23158.5 or otherwise." (Italics added.)

Appellant contends that collateral estoppel principles prevent relitigation of the lawfulness of the arrest in the administrative proceeding, and that he was "acquitted" of the criminal charges within the meaning of section 13353.2, subdivision (e). The California Public Defender's Association, as amicus curiae in support of appellant, also argues that Penal Code section 1538.5, subdivision (d), prohibits use in the administrative proceeding of evidence suppressed in the criminal case. We consider the three arguments in order.

B.   *Collateral Estoppel*

■ In general, collateral estoppel precludes a party from relitigating issues litigated and decided in a prior proceeding. (*People* v. *Sims* (1982) 32

Cal.3d 468, 477 [186 Cal.Rptr. 77, 651 P.2d 321]; *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439].) "Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Lucido* v. *Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995].) Even if these threshold requirements are satisfied, the doctrine will not be applied if such application would not serve its underlying fundamental principles. (*Id.* at p. 339.)

The DMV concedes that the first four requirements are satisfied: the identical issue—the lawfulness of the arrest—was litigated in the criminal proceeding, and it was necessarily and finally decided on the merits. Appellant, for his part, does not argue that the prosecution in the criminal proceeding is the same party as the DMV in the administrative proceeding. The disagreement centers around whether the DMV is in privity with the prosecution.

"[T]he determination whether a party is in privity with another for purposes of collateral estoppel is a policy decision." (*Dyson* v. *State Personnel Bd.* (1989) 213 Cal.App.3d 711, 724 [262 Cal.Rptr. 112]; see also *Lucido* v. *Superior Court, supra*, 51 Cal.3d at pp. 342-343 ["We have repeatedly looked to the public policies underlying the doctrine before concluding that collateral estoppel should be applied in a particular setting."]; *People* v. *Sims, supra*, 32 Cal.3d at p. 477 ["this court must consider whether the traditional requirements and policy reasons for applying collateral estoppel were satisfied by the facts of this case"].) "Privity is essentially a shorthand statement that collateral estoppel is to be applied in a given case [assuming the other requirements are satisfied]; there is no universally applicable definition of privity." (*Lynch* v. *Glass* (1975) 44 Cal.App.3d 943, 947 [119 Cal.Rptr. 139]; also quoted in *People* v. *Sims, supra*, 32 Cal.3d at p. 486.) "The concept refers 'to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is "sufficiently close" so as to justify application of the doctrine of collateral estoppel.' " (*People* v. *Sims, supra*, 32 Cal.3d at pp. 486-487, quoting *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875 [151 Cal.Rptr. 285, 587 P.2d 1098].)

Numerous cases involving a refusal to take a chemical test under section 13353 have examined whether the DMV and criminal prosecutors

are in privity with each other, and have reached conflicting conclusions. (*Zapata* v. *Department of Motor Vehicles, supra,* 2 Cal.App.4th 108 [privity]; *Pawlowski* v. *Pierce* (1988) 202 Cal.App.3d 692 [249 Cal.Rptr. 49] [no privity]; *Buttimer* v. *Alexis* (1983) 146 Cal.App.3d 754, 760 [194 Cal.Rptr. 603] [privity]; *Lofthouse* v. *Department of Motor Vehicles* (1981) 124 Cal.App.3d 730, 736-738 [177 Cal.Rptr. 601] [no privity]; *Shackelton* v. *Department of Motor Vehicles* (1975) 46 Cal.App.3d 327, 331 [119 Cal.Rptr. 921] [privity].)

Appellant cites the cases finding privity. In *Zapata* v. *Department of Motor Vehicles, supra,* 2 Cal.App.4th 108, the court compared the district attorney's prosecution of drunk-driving cases and the DMV's handling of administrative proceedings, and concluded: "The obvious purpose of both agencies in both proceedings is to protect the public from those who drive under the influence of alcohol or drugs. From each proceeding, sanctions may flow that will hopefully deter such conduct. . . . [¶] Since both agencies represent the state, both have the same interest of protecting the public from those who drive under the influence, and both initiate proceedings in an effort to obtain sanctions to deter such conduct, it is clear that the relationship between the district attorney and DMV in the context of [driving under the influence] enforcement is 'sufficiently close' to support a finding of privity for the purpose of applying collateral estoppel. (See *People* v. *Sims, supra,* 32 Cal.3d at pp. 486-488.)" (*Id.* at p. 115.)

The *Zapata* court further concluded that the public policy considerations of "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation" favor application of the collateral estoppel doctrine. (*Zapata* v. *Department of Motor Vehicles, supra,* 2 Cal.App.4th at p. 115.)

The DMV and dissent below counter with the cases finding no privity. Justice Huffman argued: "Common sense indicates the public prosecutors and a state licensing agency are totally separate entities. *Zapata,* seeking to find privity by the use of generalization, concludes that since both agencies represent the state and have an interest in protecting the public from drunk drivers, they are in privity. Respectfully, that logic would place the Governor, the Legislature, the public prosecutors, the DMV, and any agency devoted to the rehabilitation of alcoholics in privity as they represent state agencies and have an interest in protecting the public from drunk drivers.

"In this case the San Diego City Attorney of necessity has its own agenda in selecting the cases to prosecute, determining how to marshal its evidence, and whether to seek review of potentially erroneous decisions issued by the

municipal courts. Both the prosecutor and DMV exist in a time of limited resources with crushing workloads and must set their own agendas independent of each other. There is absolutely no indication in this record the city attorney is aware of or has any interest in furthering the administrative responsibilities of the DMV. To find privity for purposes of collateral estoppel on this record is to simply create it out of thin air."

In deciding this question, we face a significant constraint not present in the earlier cases. The Legislature has now addressed the matter, and made the policy decisions. The 1989 legislation, operative July 1, 1990, repeatedly states that the results of the administrative proceeding have no collateral estoppel effect on the criminal prosecution. (§§ 13353.2, subd. (e), 13557, subd. (f), 13558, subd. (g), 13559, subd. (b).)[2] This was an apparent reaction to *People* v. *Sims, supra,* 32 Cal.3d 468, which held that the results of administrative hearings could preclude criminal prosecution for welfare fraud. The *Sims* result was itself a policy decision, but one informed by the "unique statutory scheme" at issue there. (*Id.* at p. 490; see *Lucido* v. *Superior Court, supra,* 51 Cal.3d at p. 349.)

The Legislature thus made the policy decision that, whatever similarities there may or may not be between this situation and that of *People* v. *Sims, supra,* 32 Cal.3d 468, administrative proceedings before the DMV will *not* have a preclusive effect on related criminal proceedings. If, today, a defendant were to argue that a favorable administrative outcome collaterally estopped a criminal prosecution, and cited *Sims* to support the contention, the contrary legislative enactment would clearly prevail. Absent constitutional constraints,[3] when the Legislature has established policy, it is not for the courts to differ. (*Mercer* v. *Department of Motor Vehicles, supra,* 53 Cal.3d at pp. 761, 769; *AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 818 [274 Cal.Rptr. 820, 799 P.2d 1253] [because the legislative bodies made the

---

[2]In *Zapata* v. *Department of Motor Vehicles, supra,* 2 Cal.App.4th at page 116, footnote 2, the court itself recognized the enactment of this legislation, which also affects refusal cases, but noted that it "became effective after the events" of that case.

[3]Appellant argues that imposing administrative sanctions despite the dismissal of criminal charges would violate the constitutional prohibition against double jeopardy. The claim lacks merit. It has long been generally held that even an acquittal of criminal charges does not prohibit civil proceedings based upon the same underlying conduct. (*United States* v. *Ward* (1980) 448 U.S. 242, 248, 250 [65 L.Ed.2d 742, 749, 100 S.Ct. 2636]; *One Lot Emerald Cut Stones* v. *United States* (1972) 409 U.S. 232, 234-236 [34 L.Ed.2d 438, 441-443, 93 S.Ct. 489]; *In re Coughlin* (1976) 16 Cal.3d 52, 58 [127 Cal.Rptr. 337, 545 P.2d 249]; *Zitny* v. *State Bar* (1966) 64 Cal.2d 787, 790-791, fn. 1 [51 Cal.Rptr. 825, 415 P.2d 521] [acquittal of criminal charges no bar to attorney disbarment proceedings based upon the same conduct]; *Lofthouse* v. *Department of Motor Vehicles, supra,* 124 Cal.App.3d at pp. 736-737; see generally 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 234, pp. 671-672; and Annot., Conviction or Acquittal in Previous Criminal Case as Bar to Revocation or Suspension of Driver's License on Same Factual Charges (1964) 96 A.L.R.2d 612, and Later Case Service.)

policy decision that environmental cleanup costs may be insured, "public policy considerations" were not relevant to deciding whether the specific insurance policies at issue did cover the costs].)

Here, of course, appellant does not seek to have the administrative proceeding preclude the criminal, but the reverse. As will be explained further in part II. C., *post*, the bill that was eventually enacted into law, as originally introduced in the Legislature, provided that *neither* the criminal *nor* the administrative proceeding would have any effect on the other. If this original version had been enacted, we would have had to reject out of hand appellant's collateral estoppel argument, whatever we might otherwise think of the policy considerations. The bill was significantly amended during the legislative process, and the enacted statute specifies that an "acquitt[al]" of the criminal charges *does* preclude the administrative sanction. (§ 13353.2, subd. (e).) The Legislature has thus chosen to have the administrative proceeding not affect the criminal at all, but to have the criminal affect the administrative in a specified limited manner.

Because the Legislature has specified exactly what preclusive effect the criminal proceeding has on the administrative, we may not grant greater preclusive effect merely because we may find it to be desirable. *Expressio unius est exclusio alterius*. The expression of some things in a statute necessarily means the exclusion of other things not expressed. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391, fn. 13 [241 Cal.Rptr. 67, 743 P.2d 1323].) The expression of preclusion by an *acquittal* excludes preclusion in other regards not expressed.

The answer to the instant question is therefore not to be found by applying "[t]raditional[ ]" (*Lucido* v. *Superior Court, supra,* 51 Cal.3d at p. 341) collateral estoppel analysis, but rather by interpreting section 13353.2, subdivision (e). If appellant was "acquitted" of the criminal charges within the meaning of that subsection, the DMV is precluded from suspending his license; otherwise, it is not so precluded.[4] We turn now to a consideration of that question.

C.  *Acquittal*

As noted in footnote 3, *ante,* an acquittal in a criminal case does not necessarily preclude administrative proceedings based upon the same facts.

---

[4]Contrary to the dissenting opinion of Justice Mosk, we are not "interpret[ing] section 13353.2 to reinsert what the Legislature has deleted." (Dis. opn. of Mosk, J., *post,* at p. 861.) The Legislature deleted language that would have given no preclusive effect whatsoever to the criminal proceeding. We interpret the legislation, as enacted, to give the preclusive effect specified, but no more.

The Legislature could have made the administrative suspension proceeding of this case completely independent of the criminal. "An acquittal of a criminal charge might represent only a conclusion that the proof was not sufficient to prove guilt beyond a reasonable doubt, not an adjudication that the driver did not actually drive with the unlawful blood-alcohol level." (*Peretto* v. *Department of Motor Vehicles*, *supra*, 235 Cal.App.3d at p. 462; see *One Lot Emerald Cut Stones* v. *United States*, *supra*, 409 U.S. at pp. 234-235 [34 L.Ed.2d at pp. 441-442].)

The bill that became the "administrative per se" law originally provided that neither the criminal nor the administrative proceeding would have any impact on the other. Under Senate Bill No. 1623, 1989-1990 Regular Session, as introduced on March 10, 1989, section 13353.2, subdivision (f), would have stated in pertinent part: "The determination of the facts in subdivision (a) is a civil matter which is independent of the determination of the same or similar facts in the adjudication of any criminal charges arising out of the same occurrence. The disposition of those criminal charges shall not affect any revocation action taken under this section."

During the legislative process, the final sentence of the language quoted in the previous paragraph was deleted, and replaced with language substantially identical to the current second sentence of section 13353.2, subdivision (e), i.e., "If a person is acquitted of criminal charges relating to a determination of facts under subdivision (a)," the suspended license must be reinstated. (Assem. Amend. to Sen. Bill No. 1623 (1989-1990 Reg. Sess.) Aug. 21, 1989, § 4.) A later amendment and subsequent clean-up legislation renumbered subdivision (f) of section 13353.2 as subdivision (e), and amended it to read as it now does. (Assem. Amend. to Sen. Bill No. 1623 (1989-1990 Reg. Sess.) Sept. 11, 1989, § 4; Stats. 1990, ch. 431, § 4.)

It is apparent from this legislative history and the language of section 13353.2, subdivision (e), that the Legislature assumed the administrative proceeding would finish before the criminal, and the license would therefore be suspended before any acquittal. The Legislature did not contemplate the situation here, where the criminal action was terminated at an early stage before the administrative suspension. We do not believe, however, that this circumstance affects the outcome of this case. If, as the statute provides, an acquittal necessitates the reinstatement of a license already suspended, it would also clearly preclude the DMV from later suspending the license for

the same conduct. The Legislature did not intend the specified preclusive effect to be controlled by the sequence of events.[5]

We must determine what the Legislature intended when it chose to have an acquittal preclude an administrative suspension. Obviously, when a trial on the merits of a criminal charge results in a verdict of not guilty, the defendant has been acquitted. Is one also acquitted when, as here, the charges are dismissed following suppression of the relevant evidence and the prosecution's statement that it is therefore unable to proceed?

In interpreting the language of a statute, we first turn to the words themselves. (*IT Corp.* v. *Solano County Bd. of Supervisors* (1991) 1 Cal.4th 81, 98 [2 Cal.Rptr.2d 513, 820 P.2d 1023].) The key word here, of course, is "acquitted." The statute does not define the word, and our review of available legislative materials discloses nothing that sheds light on its meaning not apparent from the language of the bills and the statute itself. However, the term "acquitted" or "acquittal" is used throughout the Penal Code in contexts consistently indicating a decision on the merits by the fact finder following the attachment of jeopardy. (E.g., Pen. Code, §§ 654, 656, 793, 794, 1022, 1023, 1096, 1118, 1118.1, 1151, 1161, 1165, 1447.) The only apparent exception is the reference to "acquitted on the ground of variance between the accusatory pleading and the proof" in Penal Code section 1021. But even that statute provides that if the defendant was so acquitted, but "without a judgment of acquittal, it is not an acquittal of the same offense."

Judicial decisions have construed the term consistently with its use throughout the Penal Code. When a statute uses terms that have been judicially construed, it is presumed that the terms have been used in the sense that the courts have placed upon them. (*People* v. *Weidert* (1985) 39 Cal.3d 836, 845-846 [218 Cal.Rptr. 57, 705 P.2d 380].) A question similar to the one here has arisen in death penalty cases. Penal Code section 190.3 provides that at the penalty phase, no evidence may be admitted of criminal activity for which the defendant had been "prosecuted and acquitted." In

---

[5]The dissenting opinions of Justices Mosk and Kennard apparently *would* make the sequence of events control. Those opinions either render the second sentence of section 13353.2, subdivision (e), meaningless, or would hold that when, as normally would be the case, the administrative proceeding precedes the criminal, only a later *acquittal* would affect an earlier administrative determination; a judicial finding of an unlawful arrest would not have an effect. (Dis. opn. of Mosk, J., *post,* at pp. 860-861 [the preclusion rules of § 13353.2, subd. (e), apply when the DMV "hearing occurs before criminal court proceedings, and not the converse"]; *id.* at p. 861 [the "lawmakers . . . limit[ed] the statute's preclusion rules to disputes in which the DMV hearing occurred first"]; dis. opn. of Kennard, J., *post,* at p. 875.)

We do not believe the Legislature engaged in a meaningless exercise in enacting the second sentence of section 13353.2, subdivision (e), or that it intended the outcome to depend upon a race between the judicial and administrative proceedings.

1987 and 1988 (and again after the adoption of the statute at issue here), this court held that a "dismissal not based on any judicial determination with respect to the truth or falsity of the charge is not an acquittal under section 190.3." (*People* v. *Heishman* (1988) 45 Cal.3d 147, 193 [246 Cal.Rptr. 673, 753 P.2d 629]; see also *People* v. *Medina* (1990) 51 Cal.3d 870, 907 [274 Cal.Rptr. 849, 799 P.2d 1282] and *People* v. *Ghent* (1987) 43 Cal.3d 739, 774 [239 Cal.Rptr. 82, 739 P.2d 1250].) A dismissal under Penal Code section 995, for example, is not an acquittal. (*People* v. *Ghent, supra*, 43 Cal.3d at p. 774; *People* v. *Reeves* (1967) 250 Cal.App.2d 490, 492 [58 Cal.Rptr. 517].)

We therefore conclude that when the Legislature used the word "acquitted" it did not intend to necessarily include a dismissal. ■ "The term 'acquittal,' . . . generally refers to a disposition based upon a determination of the merits. [Fn. omitted.] '[A] defendant is acquitted only when "the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged." [Citation.]' (*United States* v. *Scott* (1978) 437 U.S. 82, 97 [57 L.Ed.2d 65, 78, 98 S.Ct. 2187] [defining the term in the context of double jeopardy].)" (*Agresti* v. *Department of Motor Vehicles, supra*, 5 Cal.App.4th at pp. 604-605; see also *Snow* v. *Department of Motor Vehicles* (1993) 17 Cal.App.4th 230, 233 [21 Cal.Rptr.2d 68] [dismissal of criminal charges after a trial resulted in a hung jury is not an acquittal under section 13353.2].)

■ In *Agresti* v. *Department of Motor Vehicles, supra*, 5 Cal.App.4th at page 604, the record did not disclose the reason for the dismissal, and the court held that it was not an acquittal. The court specifically noted the case did not involve a dismissal following a finding by the trial court that the defendant had been unlawfully arrested. (*Id.* at pp. 604-605, fn. 2.) This case does. However, we do not believe the result here should be different.

The context in which the word "acquitted" is used in the statute also shows that the Legislature intended it to have its usual meaning, and not a broader meaning encompassing dismissals for reasons unrelated to actual innocence. Section 13353.2, subdivision (e), refers to a person "acquitted of criminal charges *relating to a determination of facts under subdivision (a)* . . . ." (Italics added.) The only facts mentioned in subdivision (a) are those relating to actual guilt or innocence, specifically (1) driving (2) with a blood-alcohol level of 0.08 percent or more. (See *Claxton* v. *Zolin, supra*, 8 Cal.App.4th at p. 560; *Helmandollar* v. *Department of Motor Vehicles* (1992)

7 Cal.App.4th 52, 56 [9 Cal.Rptr.2d 155].)[6] The requirement of a lawful arrest is found *elsewhere*, in section 13557, subdivision (b)(2)(A). Therefore, only an acquittal relating to the person's actual innocence of driving with the prohibited blood-alcohol level comes within the scope of section 13353.2, subdivision (e); a ruling regarding the lawfulness of the arrest does not.

This interpretation of the word "acquitted" is consistent with the purposes of the administrative per se legislation. One purpose is to provide a prompt administrative review of the suspension. This review includes a determination of the lawfulness of the arrest, and is itself subject to judicial review. Another purpose is to make the highways of California safer. "Deterring drunk driving and identifying and removing drunk drivers from the roadways undeniably serves a highly important governmental interest. . . . Stopping the carnage wrought on California highways by drunk drivers is a concern the importance of which is difficult to overestimate." (*Ingersoll* v. *Palmer* (1987) 43 Cal.3d 1321, 1338-1339 [241 Cal.Rptr. 42, 743 P.2d 1299].)

In furthering these purposes, the Legislature used precise language. It chose to prevent the DMV from suspending a driver's license if the criminal courts found the person in fact not guilty of drunk driving, but not otherwise. "It would be inconsistent with the purpose of this factfinding procedure [administrative review], and with the intent to suspend the driving privilege of those who are thus found to have been driving under the influence, to rescind the suspension for reasons that have nothing to do with whether the person was in fact driving while intoxicated." (*Agresti* v. *Department of Motor Vehicles*, *supra*, 5 Cal.App.4th at p. 606; see also *Claxton* v. *Zolin*, *supra*, 8 Cal.App.4th at p. 561.)

Appellant relies on cases holding either that a dismissal is the equivalent of an acquittal for double jeopardy purposes when based upon insufficiency of the evidence to establish factual guilt (e.g., *Smalis* v. *Pennsylvania* (1986) 476 U.S. 140, 144 [90 L.Ed.2d 121, 116, 106 S.Ct. 1745]), or that a certain dismissal prohibited further criminal proceedings. (*People* v. *Superior Court* (*Lauman*) (1963) 217 Cal.App.2d 517 [31 Cal.Rptr. 710].) These cases do not aid him. Here, there was never a judicial finding of insufficient evidence to establish the relevant facts; rather, the evidence that would prove them was suppressed. Moreover, as explained in *Agresti* v. *Department of Motor Vehicles*, *supra*, 5 Cal.App.4th at page 606, "The question here is not whether the dismissal of charges barred further criminal prosecution, but

---

[6]As originally enacted, section 13353.2, subdivision (a), applied to a person who was driving or "was in actual physical control of" a motor vehicle. In 1992, the statute was amended to include only a person "driving a motor vehicle." (Stats. 1992, ch. 1281, § 4.)

whether it also was intended to have the effect of overturning a prior, separate civil order suspending Agresti's driving privilege [or prohibiting such suspension in the first place]."

We thus hold that a person is "acquitted" of the criminal charges within the meaning of section 13353.2, subdivision (e), if, but only if, the ruling represents a judicial determination in the person's favor of one or more of the factual elements of subdivision (a) of section 13353.2, that is, that the person either was not driving the motor vehicle or did not have the prohibited blood-alcohol level.

The dismissal here was based upon the finding that the arrest was unlawful and the resultant inability of the prosecution to proceed. There was no judicial ruling that appellant did not in fact drive while intoxicated. In this situation, the Legislature allows the DMV to conduct the administrative suspension process independently of the criminal action. Accordingly, the dismissal of the criminal charges did not prevent the DMV from determining the lawfulness of the arrest, subject to judicial review under section 13559.

### D. *Penal Code section 1538.5, subdivision (d)*

■ Amicus curiae in support of appellant argues that Penal Code section 1538.5, subdivision (d), makes the evidence suppressed in the criminal case inadmissible in the administrative matter. That subdivision provides: "If a search or seizure motion is granted pursuant to the proceedings authorized by this section, the property or evidence shall not be admissible against the movant at *any trial or other hearing* unless further proceedings authorized by this section, Section 871.5, Section 1238, or Section 1466 are utilized by the people." (*Ibid.*, italics added.)

The argument of amicus curiae is straightforward: the administrative hearing of this case is "any trial or other hearing" within the meaning of Penal Code section 1538.5, subdivision (d); since the People did not utilize any of the further proceedings listed in the subdivision, the evidence is not admissible in the administrative hearing. No authority directly on point is cited. Indeed, only criminal cases are cited at all.

Despite the fact that section 1538.5, subdivision (d), has been part of Penal Code section 1538.5 ever since its enactment in 1967, no court has ever applied it outside of criminal cases. Specifically, in the 26 years since

that subdivision was enacted, it has never been interpreted to require exclusion of evidence at an administrative hearing.[7] We do not believe that when it enacted section 13353.2, subdivision (e), relating to the administrative proceeding, the Legislature intended that a part of the Penal Code be suddenly interpreted, 26 years after its enactment, to mandate a greater preclusive effect in the administrative proceeding than the Legislature specifically granted.

We also find it unlikely the Legislature intended Penal Code section 1538.5, subdivision (d), to have the all-encompassing application that the argument of amicus curiae necessarily implies. As we noted in *Schlick* v. *Superior Court* (1992) 4 Cal.4th 310, 316 [14 Cal.Rptr.2d 406, 841 P.2d 926], " 'According to committee reports prepared prior to the enactment of section 1538.5, the intent underlying that section was to reduce the unnecessary waste of judicial time and effort involved in the prior procedures, whereby search and seizure questions could be repeatedly raised *in criminal proceedings*. [Citation.]' (*People* v. *Superior Court* [*Edmonds*] (1971) 4 Cal.3d 605, 610 [94 Cal.Rptr. 250, 483 P.2d 1202].)" (Italics added.) This intent does not suggest extending the coverage of that subdivision to civil or administrative matters.

A literal, universal, application of Penal Code section 1538.5, subdivision (d), would have results the Legislature certainly did not intend. For example, if evidence proving that a person murdered someone were suppressed under section 1538.5, we doubt that the Legislature intended the evidence be similarly suppressed in a civil wrongful death action brought by the survivors against the murderer. The Legislature no doubt intended subdivision (d) of that section to apply solely to criminal cases. We should not extend it to other cases at this late date.

Other statutory provisions bolster the conclusion that Penal Code section 1538.5, subdivision (d), does not apply. Vehicle Code section 14112 provides that "All matters in a hearing not covered by this chapter shall be governed, as far as applicable, by Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code." The administrative proceedings at issue here are not part of the chapter mentioned in section 14112 (which commences with Vehicle Code section 13800), and are therefore governed by chapter 5 of the Government Code.

Government Code section 11513, subdivision (c), part of that chapter, provides in pertinent part: "The hearing need not be conducted according to

---

[7] In *People* v. *Williams* (1979) 89 Cal.App.3d 1026, 1032 [152 Cal.Rptr. 892], the court stated in dicta, "Clearly, [Penal Code section 1538.5, subdivision (d),] does not refer to a subsequent civil trial or to a subsequent administrative hearing." The correctness of this dicta was questioned in *Buttimer* v. *Alexis, supra,* 146 Cal.App.3d at pages 762-763, footnote 4.

technical rules relating to evidence and witnesses, except as hereinafter provided. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." Citing this provision, we have held, "Technical rules of evidence do not apply to administrative hearings." (*Big Boy Liquors, Ltd.* v. *Alcoholic Bev. etc. Appeals Bd.* (1969) 71 Cal.2d 1226, 1230 [81 Cal.Rptr. 258, 459 P.2d 674].)

It is settled that the exclusionary rule does not apply to all administrative hearings. (E.g., *Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 229 [113 Cal.Rptr. 175, 520 P.2d 991] [attorney disciplinary proceeding]; *Finkelstein* v. *State Personnel Bd.* (1990) 218 Cal.App.3d 264 [267 Cal.Rptr. 133] [disciplinary proceeding]; see generally 1 Witkin, Cal. Evidence (3d ed. 1986) Introduction, § 55, p. 49.) We find nothing in Penal Code section 1538.5, subdivision (d), or the cases construing it suggesting the exclusionary rule must apply whenever there has been a suppression hearing in some criminal case.

This court has construed Penal Code section 1538.5, subdivision (d), on two occasions. We have held that it made suppressed evidence inadmissible at the sentencing hearing in the same case in which the Penal Code section 1538.5 hearing was held (*People* v. *Belleci* (1979) 24 Cal.3d 879 [157 Cal.Rptr. 503, 598 P.2d 473]), and prohibits refiling the same charges that were dismissed because of a suppression ruling. (*Schlick* v. *Superior Court*, *supra*, 4 Cal.4th 310.) Nothing in either case suggests that the subdivision applies outside the criminal law realm.

In *Schlick* v. *Superior Court*, *supra*, 4 Cal.4th at page 316, we left open the possibility that Penal Code section 1538.5, subdivision (d), might not even apply to all criminal cases. We distinguished the refiling of the same charges in the same county, the situation in *Schlick*, from "multi-county prosecutions, or . . . cases wherein new or different charges are brought," and did not decide the latter questions. (*Schlick* v. *Superior Court*, *supra*, 4 Cal.4th at p. 316.) As in *Schlick*, we need not now decide the difficult question of the application of that subdivision to other *criminal* cases. We conclude, however, that Penal Code section 1538.5, subdivision (d), does not itself prohibit relitigation of the legality of the arrest in the administrative proceeding.  '

### III.  CONCLUSION

The Court of Appeal erred in holding that the DMV was precluded from relitigating the lawfulness of the arrest. The judgment of the Court of Appeal is therefore reversed. Each party shall bear its own costs.

Lucas, C. J., Baxter, J., and George, J., concurred.

**MOSK, J.,** Dissenting.—I agree with society's need to stem drunk driving. Although the majority's description of drunk drivers' mental state as cruel is questionable rhetoric—it is more likely to be stuporous at the time of arrest and indifferent to the consequences beforehand—there is no doubt that the *effects* of drunk driving are cruel indeed.

Nevertheless, I dissent. The majority's reasoning cannot be squared with principles of statutory construction or issue preclusion, i.e., collateral estoppel. The Legislature—not this court—must prescribe the result the majority reach. The rub, however, is that the Legislature evidently has indicated that it does *not* desire the majority's result. It did so by removing from Vehicle Code section 13353.2 (hereafter section 13353.2) the very language the majority now read into that section, and replacing it with language to contrary effect.

## I.

Subdivision (e) of section 13353.2 specifies rules of preclusion for contests in which a Department of Motor Vehicles (DMV) hearing occurs before criminal court proceedings, and not the converse, as in the case before us.

As finally enacted, section 13353.2, subdivision (e), provides, in relevant part: "The determination of the facts in subdivision (a) [i.e., whether a driver's blood-alcohol concentration equaled or exceeded 0.08 percent by weight] is a civil matter which is independent of the determination of the person's guilt or innocence, shall have no collateral estoppel effect on a subsequent criminal prosecution, and shall not preclude the litigation of the same or similar facts in the criminal proceeding. If a person is acquitted of criminal charges relating to a determination of facts under subdivision (a), the department shall immediately reinstate the person's privilege to operate a motor vehicle if the department has suspended it administratively pursuant to subdivision (a), and the department shall return or reissue . . . any driver's license . . . taken from the person . . . ."

The Legislature originally proposed to provide in subdivision (f) of section 13353.2, "The determination of the facts in subdivision (a) is a civil matter which is independent of the determination of the same or similar facts in the adjudication of any criminal charges arising out of the same occurrence. *The disposition of those criminal charges shall not affect any revocation action taken under this section. . . .*" (Sen. Bill No. 1623 (1989-1990 Reg. Sess.) Mar. 10, 1989, § 4, italics added.) The italicized language (as modified slightly in the interim) was then deleted. (Assem. Amend. to Sen. Bill No. 1623 (1989-1990 Reg. Sess.) Aug. 21, 1989, § 4.)

The modifications indicate the Legislature originally contemplated a situation like that in this case, in which the criminal charges were adjudicated first and the DMV hearing followed. The Legislature originally specified that the criminal disposition would not affect the later administrative proceeding. The lawmakers then apparently changed their minds, limiting the statute's preclusion rules to disputes in which the DMV hearing occurred first.

Confirming the effect of the deletion of the italicized language, the first sentence of section 13353.2, subdivision (e), now refers to "a subsequent criminal prosecution," in place of the earlier draft's reference to "any criminal charges . . . ." (See also Veh. Code, § 13557, subd. (f) [no collateral estoppel effect on "subsequent criminal prosecution" following DMV review of suspension order under section 13353.2]; *id.*, § 13558, subd. (g) [no collateral estoppel effect on "subsequent criminal prosecution" following administrative hearing on suspension order].) And the second sentence of section 13353.2, subdivision (e), specifies that "If a person is acquitted of criminal charges relating to a determination of facts under subdivision (a), the department shall" restore the person's driving privilege without charge if it has "suspended it administratively pursuant to subdivision (a) . . . ."

The effect on this court of the Legislature's decision to omit the prior language from the final version of the bill is plain. We cannot interpret section 13353.2 to reinsert what the Legislature has deleted. " 'The rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision.' (*Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591, 607 [45 Cal.Rptr. 512]; see also *California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 845-846 [157 Cal.Rptr. 676, 598 P.2d 836]; *Stroh* v. *Midway Restaurant Systems, Inc.* (1986) 180 Cal.App.3d 1040, 1055 [226 Cal.Rptr. 153].) This court should not grant through litigation what could not be achieved through legislation[.]" (*California Assn. of Psychology Providers* v. *Rank* (1990) 51 Cal.3d 1, 32-33 [270 Cal.Rptr. 796, 793 P.2d 2] (dis. opn. of Kennard, J., joined by Lucas, C. J., and Panelli, J.).) To do so would be "comparable to insisting that when the states repealed the 18th Amendment they intended to retain prohibition." (*Isbister* v. *Boys' Club of Santa Cruz, Inc.* (1985) 40 Cal.3d 72, 94 [219 Cal.Rptr. 150, 707 P.2d 212] (dis. opn. of Mosk, J.).)

The appellate courts of this state have also uniformly held that a statute cannot be interpreted to include what was specifically excluded in the drafting process. " 'To do so would not be interpreting the legislative intent

but would be a gross example of judicial legislation in contravention of the legislative intent logically implied from the rejection by the Legislature of an identical provision.' (*People* v. *Brannon* (1973) 32 Cal.App.3d 971, 977 [108 Cal.Rptr. 620]; accord, *Western Land Office, Inc.* v. *Cervantes* (1985) 175 Cal.App.3d 724, 741 [220 Cal.Rptr. 784].)" (*Shaw* v. *McMahon* (1987) 197 Cal.App.3d 417, 426 [243 Cal.Rptr. 26]; accord, *People* v. *Gangemi* (1993) 13 Cal.App.4th 1790, 1798 [17 Cal.Rptr.2d 462]; *Wilson* v. *City of Laguna Beach* (1992) 6 Cal.App.4th 543, 555 [7 Cal.Rptr.2d 848]; *Crespin* v. *Kizer* (1990) 226 Cal.App.3d 498, 514 [276 Cal.Rptr. 571]; *Stroh* v. *Midway Restaurant Systems, Inc.* (1986) 180 Cal.App.3d 1040, 1055 [226 Cal.Rptr. 153] ["When the Legislature rejects language from a bill which was part of it when it was introduced, it should be construed according to the final version."]; *California Coastal Com.* v. *Quanta Investment Corp.* (1980) 113 Cal.App.3d 579, 601 [170 Cal.Rptr. 263] ["the deletion of the flat statement that the bill was declaratory of existing law . . . and its nonappearance in the final bill strongly signifies that no legislative concurrence could be obtained for that statement of policy"].)

Other jurisdictions are also in accord. The United States Supreme Court has spoken authoritatively: " 'Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language.' " (*INS* v. *Cardoza-Fonseca* (1987) 480 U.S. 421, 442-443 [94 L.Ed.2d 434, 454-455, 107 S.Ct. 1207].) In an earlier case, the federal high court observed, "Where Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended." (*Russello* v. *United States* (1983) 464 U.S. 16, 23-24 [78 L.Ed.2d 17, 24, 104 S.Ct. 296].) And still earlier that court noted, "The Conference Committee, however, deleted this 'effects on commerce' provision, leaving only the 'in commerce' language . . . . [Congress's] action strongly militates against a judgment that Congress intended a result that it expressly declined to enact." (*Gulf Oil Corp.* v. *Copp Paving Co.* (1974) 419 U.S. 186, 200 [42 L.Ed.2d 378, 389, 95 S.Ct. 392].)

The high courts of other states are also of a view contrary to that of the majority. "The deletion of a provision in a pending bill discloses the legislative intent to reject the proposal. [Citation.] Courts should be slow to put back that which the legislature has rejected." (*Transportation Ins. Co.* v. *Maksyn* (Tex. 1979) 580 S.W.2d 334, 338; accord, *Smith* v. *Baldwin* (Tex. 1980) 611 S.W.2d 611, 616-617.) "The rejection by the legislature of a specific provision contained in a proposed enactment is persuasive to the conclusion that the act should not be so construed as in effect to include that provision, at least where there is no basis for the assumption that the words

omitted were surplusage. [Citations.]" (*City of Manhattan* v. *Eriksen* (1969) 204 Kan. 150 [460 P.2d 622, 625]; cf. *Diamond Crystal Salt Company* v. *P.J. Ritter Company* (1st Cir. 1969) 419 F.2d 147, 148; *Burlington Truck Lines* v. *Iowa Employ. Sec. Com'n* (1948) 239 Iowa 752 [32 N.W.2d 792, 797] [both relying on exception for surplusage].)

Here, unfortunately, the majority are quick to do what the Texas Supreme Court, as noted above, wisely declared they should do slowly if at all. Of course, the rule should not be applied to yield absurd or arbitrary consequences. (See *U.S.* ex rel. *Stinson* v. *Prudential Ins.* (3d Cir. 1991) 944 F.2d 1149, 1156-1157.) But here the arbitrary consequences stem from the majority view. Careful attention in the trial court to the legality of an arrest may well give way to a summary determination by a lay DMV official much less skilled, if skilled at all, in the rules of criminal procedure and constitutional law.

## II.

Because the Legislature ultimately chose silence on the question whether a criminal court's determination that an arrest was illegal precluded the DMV from relitigating the issue, standard issue-preclusion analysis applies —not the majority's policy-based analysis (maj. opn., *ante*, at pp. 851-852), which is founded on a policy the Legislature rejected.

Applying traditional preclusion analysis, I conclude that the state is estopped from relitigating the arrest's legality. The majority and I agree that four of the five threshold requirements for collateral estoppel are satisfied. (Maj. opn., *ante*, at pp. 848-849.) I maintain that the fifth, privity, is also satisfied. Both the DMV and the district attorney zealously represent the same party: the state. Therefore, they are privies and the matter may not be relitigated. (*Zapata* v. *Department of Motor Vehicles* (1991) 2 Cal.App.4th 108, 115 [2 Cal.Rptr.2d 855].)

The touchstone of preclusion's privity element is whether the predecessor party adequately represented the successor party's interests in the outcome. (Rest.2d Judgments, § 75, com. *b*, p. 210.) "The relationships denominated by the term 'privity' fall into three general categories. The first includes relationships that are explicitly representative . . . . The second includes the array of substantive legal relationships . . . in which one of those involved in the relationship is treated as having the capacity to bind the other to a judgment . . . . The third includes successors in interest to property . . . ." (*Id.*, com. *a*, p. 210.) The relationship between the prosecution and the DMV in this case falls into the second category. (*People* v. *Sims* (1982) 32 Cal.3d 468, 486-487 [186 Cal.Rptr. 77, 651 P.2d 321].)

This is a middling case in which the successive parties' identities are not as closely linked as others' may be (e.g., Rest.2d Judgments, *op. cit. supra*, § 41, subd. (1)(a), p. 393 [trustee and beneficiary]). But California law is clear that when two agents of the state substantially share a goal, resolution of an issue adversely to one binds the other. (*People* v. *Sims, supra*, 32 Cal.3d at pp. 487-488 [prior administrative decision precluded criminal prosecution because county and district attorney both represented the state's interests and shared the goal of quelling welfare fraud].) And it is equally clear that the DMV and the district attorney's relationship is sufficiently close to require a finding of privity. "The obvious purpose of both agencies in both proceedings is to protect the public from those who drive under the influence of alcohol or drugs. From each proceeding, sanctions may flow that will hopefully deter such conduct. In the criminal proceeding, sanctions may include incarceration, fine, and other penalties including an order from the court that DMV suspend a defendant's driving privilege. (See [Veh. Code,] § 23160 et seq.) In the DMV administrative proceedings, sanctions include suspension or revocation of the defendant's driving privilege. Neither agency may obtain these sanctions if the evidentiary basis is the product of an unlawful arrest. (See *Music* v. *Department of Motor Vehicles* [1990] 221 Cal.App.3d 841 [270 Cal.Rptr. 692].) [¶] Since both agencies represent the state, both have the same interest of protecting the public from those who drive under the influence, and both initiate proceedings in an effort to obtain sanctions to deter such conduct, it is clear that the relationship between the district attorney and DMV in the context of DUI enforcement is 'sufficiently close' to support a finding of privity for the purpose of applying collateral estoppel." (*Zapata, supra*, 2 Cal.App.4th at p. 115.)

The United States Supreme Court holds a similar view. In "the leading decision" on the subject (18 Wright et al., Federal Practice and Procedure (1981) § 4458, p. 505), the court stated, "There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is *res judicata* in relitigation of the same issue between that party and another officer of the government. [Citation.] The crucial point is whether or not in the earlier litigation the representative of the United States had authority to represent its interests in a final adjudication of the issue in controversy." (*Sunshine Coal Co.* v. *Adkins* (1940) 310 U.S. 381, 402-403 [84 L.Ed. 1263, 1276, 60 S.Ct. 907].)

Other jurisdictions also hew to a similar view of privity.

Particularly instructive is *Briggs* v. *State, Dept. of Public Safety* (Alaska 1987) 732 P.2d 1078. In *Briggs*, a court ordered suppression of breathalyzer test results that showed Briggs had been driving while drunk. The prosecution did not appeal. The charges were dismissed. (*Id.* at p. 1079.) Thereafter,

however, the Division of Motor Vehicles seized Briggs's driver's license, a decision affirmed in agency proceedings that considered the test results and thereafter in a trial court. (*Id.* at pp. 1079-1080.)

The Alaska Supreme Court first held that the administrative decision to consider the breathalyzer test results was wrong because no sample was preserved nor a second test given. (732 P.2d at p. 1080.) The state argued it should be allowed to relitigate certain issues regarding the test procedure already determined adversely to it in the criminal court. (*Id.* at p. 1081; cf. *id.* at p. 1079.) The Alaska Supreme Court held that the state was estopped to relitigate the issue previously decided. As relevant here, the court decided, "we hold that the [Division of Motor Vehicles of the] Department of Public Safety and the state were in privity. 'The general rule is that litigation by one agency is binding on other agencies of the same government, but exceptions may be warranted if there are important differences in the authority of the respective agencies.' 18 C. Wright, A. Miller, and H. Cooper, *Federal Practice and Procedure* § 4458, at 504-05 (1981). . . . [¶] . . . The interests of the Department of Public Safety in litigating this issue were . . . adequately represented." (732 P.2d at pp. 1082-1083, fn. omitted.)

In *State* v. *$11,346.00 in U.S. Currency* (Wyo. 1989) 777 P.2d 65 [1 A.L.R.5th 1057], a criminal court found that money was seized via an unlawful search and could not be used as evidence. The criminal defendant moved to have the money, which was also the subject of a forfeiture proceeding, returned to him because it had been unlawfully seized. The forfeiture court agreed. In affirming the court's grant of summary judgment, the Wyoming Supreme Court rejected an argument "that the agency of the State which appears as the nominal plaintiff in forfeiture is neither identical to nor in privity with the State's agency that prosecuted [the criminal defendant]. . . . To accept this argument . . . would be to elevate form over substance and permit the State to, incongruously, have its cake and eat it too. . . ." (*Id.* at p. 68.)

In *State* v. *Parson* (1991) 15 Kan.App.2d 374 [808 P.2d 444], there was a civil judicial determination against the Motor Vehicle Department that the defendant's drilling rig need not be registered as a motor vehicle. The defendant was then convicted in criminal court of operating an unregistered vehicle on the highway. Holding that the state was collaterally estopped from bringing the criminal proceeding, the court asked "whether there is 'privity' between the State in this case and [the Motor Vehicle Department] in the prior [civil] case? We conclude there is." (808 P.2d at p. 447.) The court held that because both the Motor Vehicle Department and the prosecutor are arms of the same government, they are privies. (808 P.2d at p. 448.)

The threshold requirements for collateral estoppel having all been satisfied, there remains only the question whether policy considerations militate for or against the doctrine's application. (*Lucido* v. *Superior Court* (1990) 51 Cal.3d 335, 342-343 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995].) These considerations are "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation . . . ." (*Id.* at p. 343.) Similarly, both the United States Supreme Court and the Wyoming Supreme Court caution that in determining privity, form should not be elevated over substance. (*Chicago, R.I. & P. Ry.* v. *Schendel* (1926) 270 U.S. 611, 620 [70 L.Ed. 757, 763-764, 46 S.Ct. 420, 53 A.L.R. 1265]; *State* v. *$11,346.00 in U.S. Currency, supra,* 777 P.2d 65, 68.)

Finding collateral estoppel in this case derives from a considered view that the government should not be allowed to administratively pursue individuals who have defeated it in contentious criminal litigation. No sound policy is served by permitting an administrative functionary to review, and in effect overrule, a determination of the constitutional validity of an arrest, a matter uniquely within the judicial province and decided by a judge after a fully contested hearing. As the *Zapata* court so cogently stated, "Public confidence in the integrity of the judicial system is obviously threatened when a nonjudicial officer, in an informal administrative hearing with no testimony taken, is permitted to relitigate the validity of an arrest that has been previously determined by a municipal court judge, at a contested evidentiary hearing, in the formal setting of a criminal prosecution. If this scenario does not tend to undermine the 'integrity of the judicial system,' it is difficult to conceive of what would." (2 Cal.App.4th at p. 115.)

The Legislature decided that section 13353.2 should remain silent regarding the preclusive effect of a court's determination that an arrest was invalid. Thus, standard preclusion analysis applies, and that analysis requires a conclusion that the DMV is precluded from relitigating the question of the arrest's validity because the agency is the privy of the prosecutor in the criminal proceeding. The criminal prosecutor adequately represented the DMV's interest in getting drunk drivers off the road (Rest.2d Judgments, *op. cit. supra,* § 75, com. *b,* p. 210); thus there is no policy reason for collateral estoppel not to apply.[1] I therefore dissent.

**PANELLI, J.,** Dissenting.—I concur in Justice Mosk's dissenting opinion. I write separately to express my view that the result reached by the majority is

---

[1]Counsel for the DMV stated at oral argument that the burden of proof to establish the arrest's validity is the same in both proceedings. I agree. The government bears the burden of proof by a preponderance of the evidence in both forums. (See *Guidi* v. *Superior Court* (1973) 10 Cal.3d 1, 15, fn. 15 [109 Cal.Rptr. 684, 513 P.2d 908] [in criminal prosecution, government bears burden of proof by preponderance of evidence on claim that evidence is inadmissible due to constitutionally unreasonable seizure]; see also Veh. Code, § 13557, subd. (b)(2);

also prohibited by Penal Code section 1538.5, subdivision (d) (hereafter section 1538.5(d)).[1]

Section 1538.5 provides the exclusive procedure in this state for a criminal defendant to seek suppression of evidence obtained in violation of the Fourth Amendment to the federal Constitution or article I, section 13 of the state Constitution. (See, e.g., *In re Lance W.* (1985) 37 Cal.3d 873, 896 [210 Cal.Rptr. 631, 694 P.2d 744].)[2] Since Proposition 8 added article I, section 28, subdivision (d) to our state charter, however, a court may only *exclude* evidence from a state criminal proceeding if exclusion is mandated by the *federal* exclusionary rule applicable to evidence seized in violation of the Fourth Amendment. (*In re Lance W., supra*, 37 Cal.3d at p. 896.) The trial court found that the evidence excluded from the prosecutor's case-in-chief at the defendant's criminal trial in this case met this standard.

Section 1538.5(d) sets forth the effect of a ruling in defendant's favor on a section 1538.5 motion to suppress. This statutory provision states: "If a search or seizure motion is granted pursuant to the proceedings authorized by this section, the property or evidence shall not be admissible against the movant *at any trial or other hearing* unless further proceedings authorized by this section, Section 871.5, Section 1238, or Section 1466 are utilized by the people." (Italics added.) It is undisputed in this case that the defendant's section 1538.5 suppression motion was granted and that the People did not pursue any of the remedies set forth in section 1538.5(d). By its plain terms, the statute would appear to govern.

The majority, however, conclude that the Legislature could not have intended section 1538.5 to apply as broadly as the language of that section reads. With this basic premise, I agree. By using a reasoning process that I find insupportable, however, the majority then deduce that section 1538.5(d) is limited in its application solely to criminal cases. Therefore, the majority reason that this section does not apply to an administrative proceeding

---

*Daniels v. Department of Motor Vehicles* (1983) 33 Cal.3d 532, 536 [189 Cal.Rptr. 512, 658 P.2d 1313] [government bears burden of proof of facts required to deprive person of driver's license].) Were the burden of proof different in the two proceedings, it might affect my analysis, for failure to prove a matter beyond a reasonable doubt in a criminal proceeding does not necessarily bar an attempt to prove it in a later proceeding having a lower burden of proof. (See *In re Coughlin* (1976) 16 Cal.3d 52, 58-59 [127 Cal.Rptr. 337, 545 P.2d 249].)

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The federal Fourth Amendment restricts the states under the due process clause of the Fourteenth Amendment. Evidence obtained in violation of the Fourth Amendment exclusionary rule is inadmissible in state court. (E.g., *Mapp v. Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933].)

including the type at issue in this case, i.e., where punitive measures can be imposed.[3]

In my view, the majority's unsupported and restrictive reading of section 1538.5(d) fails to give adequate weight to the policy underlying the adoption of that section. As we have previously recognized, the Legislature enacted section 1538.5(d) to promote judicial economy in the determination and resolution of search and seizure questions. (See, e.g., *Schlick* v. *Superior Court* (1992) 4 Cal.4th 310, 316 [14 Cal.Rptr.2d 406, 841 P.2d 926].) In order to give full effect to the Legislative intent underlying this statute, I believe that section 1538.5(d) must be applied in any proceeding where the exclusionary rule is applicable. (Cf. *People* v. *Moore* (1988) 201 Cal.App.3d 877, 885-886 [247 Cal.Rptr. 353] [recognizing that, even in criminal cases, the language of section 1538.5 must be read in light of Prop. 8].)

As we have previously recognized, the exclusionary rule is based upon the principle that the *state* should not profit from its own wrongdoing by receiving the benefit of using evidence obtained by unconstitutional means. (*Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 226 [113 Cal.Rptr. 175, 520 P.2d 991].) In deciding whether the exclusionary rule should apply in a given proceeding, this court has considered: (1) whether the proceeding bears a close identity to the aims and objectives of criminal law enforcement so as to be deemed "quasi-criminal" in nature; (2) whether application of the rule in the proceeding in question will serve as a deterrent to misconduct by law enforcement officers; (3) the social cost resulting from applying the exclusionary rule in the proceeding; and (4) the effect of applying the exclusionary rule on the integrity of the judicial process. (*In re Lance W., supra,* 37 Cal.3d at p. 892 [does not automatically apply in civil proceedings]; *In re William G.* (1985) 40 Cal.3d 550, 567, fn. 17 [221 Cal.Rptr. 118, 709 P.2d 1287] [applies in juvenile court proceeding based upon search by school official]; *Emslie* v. *State Bar, supra,* 11 Cal.3d at p. 229 [does not apply in State Bar disciplinary proceedings]; *In re Martinez* (1970) 1 Cal.3d 641, 650-651 [83 Cal.Rptr. 382, 463 P.2d 734] [applies in parole revocation

---

[3]As the majority recognize, no court to date has directly held that section 1538.5(d) is inapplicable to civil trials and administrative hearings. (Compare *Buttimer* v. *Alexis* (1983) 146 Cal.App.3d 754, 762-763, fn. 4 [194 Cal.Rptr. 603] with *People* v. *Williams* (1979) 89 Cal.App.3d 1026, 1032 [152 Cal.Rptr. 892] [dictum].) This absence of authority is not surprising given that the statutory language provides no support for such a restrictive reading of the statute. The term "hearing" has been assigned a broad meaning in this state: "A 'hearing' is generally understood to be a proceeding where evidence is taken to the end of determining an issue of fact and a decision made on the basis of that evidence." (*People* v. *Pennington* (1967) 66 Cal.2d 508, 521 [58 Cal.Rptr. 374, 426 P.2d 942].) The Department of Motor Vehicles hearing at issue herein meets this description: it is an administrative adjudication governed by Government Code section 11500 et seq. (Veh. Code, §§ 13558, 14112.)

proceedings]; *People* v. *Moore* (1968) 69 Cal.2d 674, 681-682 [72 Cal.Rptr. 800, 446 P.2d 800] [applies in civil commitment proceedings]; *People* v. *One 1960 Cadillac Coupe* (1964) 62 Cal.2d 92, 96-97 [41 Cal.Rptr. 290, 396 P.2d 706] [applies in civil forfeiture proceedings]; see also *United States* v. *Janis* (1976) 428 U.S. 433, 446 [49 L.Ed.2d 1046, 1056, 96 S.Ct. 3021].)

Interpreting section 1538.5(d) to apply whenever the exclusionary rule applies is fully consistent with the legislative intent and does not implicate any of the pitfalls relied upon by the majority in support of their unduly restrictive reading of the statutory language of section 1538.5(d). For example, the exclusionary rule will apply rarely, if ever, in a civil suit. (Cf. *In re Lance W.*, *supra*, 37 Cal.3d at pp. 892-893; *United States* v. *Janis*, *supra*, 428 U.S. at pp. 453-458 [49 L.Ed.2d at pp. 1060-1063].) The majority merely set up and knock down a straw man by suggesting that, unless section 1538.5(d) is interpreted to apply only to criminal cases, that section would bar the use in civil wrongful death actions of evidence suppressed in a section 1538 motion. The exclusionary rule would not be applied in such a context. The policy reasons for the exclusion of illegally obtained evidence simply are not implicated in a civil suit between private citizens. The state itself does not benefit from the use of the evidence in a civil suit. Moreover, the exclusionary rule serves no deterrent function: the state's criminal investigators have no interest in the outcome of such an action.

Therefore, instead of approaching the question at hand with the broad brush employed by the majority, the first step in the analysis should be to determine whether the exclusionary rule applies to the type of administrative proceeding at issue. In my view, there is little room for doubt that the exclusionary rule applies in this case.

First, the statutes governing the Department of Motor Vehicles administrative proceeding implicitly incorporate the exclusionary rule. The Legislature has seen fit to provide for administrative suspension of a driver's license *only* when the underlying arrest of a driver is proven lawful. (Veh. Code, § 13557, subd. (b)(2)(A).) The parties do not urge otherwise. The purpose of such a rule is clear: in the absence of a lawful arrest any evidence seized is considered to be illegally obtained. The majority simply debate whether an administrative hearing officer is entitled to redetermine the legality of the arrest and the search and seizure questions that flow therefrom notwithstanding the fact that a judge in the underlying criminal prosecution also made such a determination.

Second, the policy reasons underlying the exclusionary rule (see, *ante*, this page) support the conclusion that the rule applies in this case. We have

explicitly held that the exclusionary rule applies in "quasi-criminal" cases, whether denominated civil or criminal in nature. (E.g., *In re Lance W., supra,* 37 Cal.3d at p. 892.) Proceedings are deemed "quasi-criminal" when "it is apparent that there is a close identity to the aims and objectives of criminal law enforcement." (E.g., *ibid.,* and cases cited therein.)

The administrative proceeding in this case must be judged "quasi-criminal" in nature. One objective of the proceeding is to punish the drunken driver by suspending driving privileges. Another objective is to deter driving while under the influence of alcohol. Both punishment and deterrence are common to criminal, as well as administrative, proceedings arising from drunk driving.

Furthermore, the arresting police officers who enforce the criminal sanctions are intimately involved in the enforcement of the civil sanctions. (E.g., *United States* v. *Janis, supra,* 428 U.S. at p. 458 [49 L.Ed.2d at pp. 1062-1063] [recognizing that deterrent effect of exclusionary rule is most potent when the sanction is imposed in a proceeding that falls within the "offending officer's zone of primary interest"].) The arresting officer makes the car stop and conducts a blood, breath or urine test. (Veh. Code, § 13353.) The arresting officer's report is generally the central piece of evidence presented in support of administrative suspension of a driver's license. (See Veh. Code, § 13557, subd. (a).) The arresting officer is fully aware that the evidence he or she gathers will be used to seek sanctions against the driver in *both* the criminal and administrative arena. Under these circumstances, policy reasons, including the deterrent effect underlying the exclusionary rule, are sufficiently strong to mandate its application.

The exclusionary rule clearly applies to this administrative proceeding.[4] The question, thus, becomes whether there is any legitimate reason not to apply section 1538.5(d).[5] In this case, I find none.

Since the exclusionary rule is applicable to the administrative proceeding, no policies underlying that rule would be offended by applying the prohibition on admission of the evidence found in the course of a section 1538.5

---

[4]The majority's reliance upon the relaxed rules of evidence in the administrative proceeding at issue to support its conclusion that section 1538.5(d) is inapplicable to the proceeding is simply unavailing. As we have previously observed: "The mere fact that rules of evidence are relaxed in an administrative proceeding has no bearing on the application of the exclusionary rules." (*Emslie* v. *State Bar, supra,* 11 Cal.3d at p. 228.) Of course, section 1538.5(d) also does not differentiate between hearings where the evidentiary rules are relaxed and hearings where they are not.

[5]We have previously recognized that the remedy set forth in section 1538.5, the bringing of a motion to suppress, is not applicable in all administrative proceedings. (*Goldin* v. *Public Utilities Commission* (1979) 23 Cal.3d 638 [153 Cal.Rptr. 802, 592 P.2d 289] [discontinuation of telephone service based on alleged criminal usage].) In the present case, we need not consider this issue. The procedure set forth in section 1538.5 was properly invoked in a

motion to have been illegally obtained. The issue of the admissibility of evidence was fully and fairly adjudicated, by a constitutional judge, under the mechanism provided by section 1538.5. There is no need for an administrative officer to undertake that determination again. Indeed, it is preferable that such a determination be made by a municipal or superior court judge, rather than an administrative official. (Cf. *Schlick* v. *Superior Court, supra,* 4 Cal.4th at p. 316; *Zapata* v. *Department of Motor Vehicles* (1991) 2 Cal.App.4th 108, 115 [2 Cal.Rptr.2d 855].)

Furthermore, the goals of the administrative hearing cannot be impaired by giving conclusive effect to the judicial determination that the arrest was based upon unlawfully obtained evidence under section 1538.5. As previously noted, the Legislature has provided for the administrative suspension of a license *only* when the underlying arrest of the driver is proven lawful. (Veh. Code, § 13557, subd. (b)(2)(A).) Given the prior judicial determination of that issue on the merits, the provisions of section 1538.5(d) simply preclude relitigation of the same issue in the subsequent administrative proceeding.

On the other hand, the policy underlying the adoption of section 1538.5(d) would be impaired by failure to apply that statutory provision in the present case. Judicial economy is not served by permitting an administrative officer, subject to judicial review, to reconsider the decision of a municipal or superior court judge regarding the lawfulness of an arrest after that decision has become final. (See, e.g., *Schlick* v. *Superior Court, supra,* 4 Cal.4th at p. 316.)

Furthermore, permitting such administrative reconsideration of search and seizure issues undermines the integrity of the criminal court's ruling and the criminal and administrative processes as a whole. (*Zapata* v. *Department of Motor Vehicles, supra,* 2 Cal.App.4th at p. 115; cf. *Schlick* v. *Superior Court, supra,* 4 Cal.4th at p. 316.) As the *Zapata* court accurately summarized: "Public confidence in the integrity of the judicial system is obviously threatened when a nonjudicial officer, in an informal administrative hearing with no testimony taken, is permitted to relitigate the validity of an arrest that has been previously determined by a municipal court judge, at a contested evidentiary hearing, in the formal setting of a criminal prosecution. If this scenario does not tend to undermine the 'integrity of the judicial system,' it is difficult to conceive of what would." (*Zapata* v. *Department of Motor Vehicles, supra,* 2 Cal.App.4th at p. 115.)

In my view, the majority's interpretation of section 1538.5(d) is unduly restrictive. That statute applies in the present case and prohibits the result

criminal proceeding. We are simply asked to assess the impact under subdivision (d) of the ruling in favor of the defendant to suppress the evidence.

reached in the majority opinion. For this reason and the reasons stated in Justice Mosk's dissenting opinion, I also would affirm the judgment of the Court of Appeal.

**KENNARD, J.,** Dissenting.—When a motorist, charged with driving under the influence of alcohol (Veh. Code, § 23152),[1] successfully moves the trial court to suppress the evidence supporting the charge on the ground that he or she was illegally detained by the arresting officer, is the Department of Motor Vehicles (hereafter also referred to as DMV) collaterally estopped[2] from relitigating the legality of the detention in a license suspension hearing held after the court's dismissal of the criminal charge? The majority holds that the doctrine of collateral estoppel does not apply, and that the DMV may, after a court of law's adjudication, relitigate, in an administrative proceeding, the legality of the detention. Justices Mosk and Panelli disagree; so do I. But the reasons for my disagreement differ from those articulated by my dissenting colleagues.

To reach the conclusion that the Legislature intended to permit the use of collateral estoppel at DMV hearings, Justice Mosk's dissenting opinion (in which Justice Panelli concurs) looks to the Legislature's omission of certain language from the final draft of the statutory scheme that regulates the manner in which a motorist's license may be suspended for driving after consuming alcohol.[3] I, on the other hand, am of the view that the statutory language it actually adopted signaled the Legislature's desire to allow the parties at DMV hearings to invoke the doctrine of collateral estoppel.

I

Appellant was charged with driving under the influence of alcohol. He moved to suppress the evidence supporting the charge, asserting that the arresting officer lacked sufficient grounds to detain him. The trial court granted the motion and, upon the People's representation that they were unable to proceed, dismissed the case against appellant. There was no appeal.

---

[1] Unless otherwise stated, all further statutory references are to the Vehicle Code.

[2] Collateral estoppel bars a party from relitigating an issue decided against the party in a prior proceeding. For collateral estoppel to apply, the party seeking to invoke the doctrine must show: (1) that the issue in question is identical to that decided in a former proceeding; (2) that the issue was actually litigated in the former proceeding; (3) that the issue was necessarily decided in the former proceeding; (4) that the decision in the former proceeding is final and on the merits; and (5) the party against whom collateral estoppel is to be applied is the same as, or in privity with, the party to the former proceeding. (*Lucido* v. *Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995].)

[3] In a separate dissenting opinion, Justice Panelli also concludes that the DMV is barred from relitigating the legality of an arrest or detention found in violation of the Fourth Amendment in a criminal case by Penal Code section 1538.5, subdivision (d).

At an ensuing administrative hearing before the DMV to decide whether appellant's driver's license should be suspended, appellant argued that, as a result of the trial court's order granting appellant's motion to suppress evidence in his criminal case, the DMV was collaterally estopped from contending that he was legally arrested.[4] The hearing officer disagreed, upheld the legality of the arrest, and suspended appellant's license for four months. The decision was upheld on administrative review. Appellant then sought administrative mandate from the superior court, which denied relief. On appeal, the Court of Appeal reversed, holding that the DMV was collaterally estopped from relitigating the legality of appellant's arrest.

## II

Under California law, the Department of Motor Vehicles must immediately suspend the driving privileges of any person who has driven a motor vehicle with a blood-alcohol level of .08 percent or greater. The notice of suspension may be served upon the motorist by a police officer (usually the arresting officer) or by the DMV. (§ 13353.2, subd. (b).) Thereafter, the DMV must review the suspension. If the DMV finds, by a preponderance of the evidence, that the arresting officer had reasonable cause to believe that the motorist was driving a motor vehicle in violation of section 23152 or 23153 (the statutes prohibiting driving under the influence), that the motorist was arrested, and that the motorist was driving with a blood-alcohol level of .08 percent or more, the DMV must sustain the suspension order. (§ 13557, subd. (b)(2).) The motorist may request an administrative hearing at which he or she is entitled to present evidence on these issues. (§§ 13557, subd. (e), 13558.)

In this case, appellant contends that the arresting officer lacked reasonable cause to believe appellant violated either section 23152 or 23153. The DMV concedes that this question had been resolved adversely to the People in appellant's criminal case,[5] but asserts that, contrary to appellant's contention, it is not collaterally estopped from again litigating this issue at the license suspension hearing.

---

[4]As I shall explain, a motorist's license may not be suspended for driving under the influence of alcohol if the motorist's arrest violated the Fourth Amendment's prohibition of illegal searches and seizures.

[5]This concession appears to be correct. Although at first glance the issue litigated in the suppression motion in appellant's criminal case (whether appellant was legally detained) appears different from the issue to be litigated in the DMV hearing (whether the arresting officer had reasonable cause to believe that appellant violated section 23152 or 23153), it is well established that at a license suspension hearing the DMV must find that the motorist was "lawfully arrested." (*Mercer* v. *Department of Motor Vehicles* (1991) 53 Cal.3d 753, 760 [280 Cal.Rptr. 745, 809 P.2d 404].) A prerequisite to a lawful arrest is a lawful detention.

I agree with the majority that general rules governing the applicability of collateral estoppel do not govern this case because, as I shall discuss more fully later, the Legislature has enacted statutes that specifically address the applicability of the doctrine of collateral estoppel to issues litigated in DMV hearings and related criminal proceedings. (Maj. opn., *ante*, at p. 852.) The majority, however, construes the statutory scheme at issue as establishing a legislative determination that the doctrine of collateral estoppel may not be invoked at DMV hearings. I disagree. As I shall explain, the pertinent statutory language compels the conclusion that when the legality of a motorist's arrest has been litigated in the course of criminal court proceedings against the motorist, the prevailing party in that litigation may employ the doctrine of collateral estoppel to preclude relitigation of the issue before the DMV.

The Legislature addressed the question of collateral estoppel in section 13558, subdivision (g). That statute provides: "A determination of facts by the [DMV] upon a hearing pursuant to this section [such as the suspension hearing held in this case] has no collateral estoppel effect on a subsequent criminal prosecution and does not preclude litigation of those same facts in the criminal proceeding."[6]

Through this provision, the Legislature signaled that the doctrine of collateral estoppel is inapplicable *only* when a party attempts to use a factual determination at a DMV hearing to bar relitigation of the issue in a subsequent criminal proceeding. Had the Legislature desired to also bar the use of collateral estoppel at a DMV hearing after adjudication in the criminal case, it would surely have said so. Therefore, applying the well-established doctrine of *expressio unius est exclusio alterius*—the expression of one thing is the exclusion of another—we may infer that the Legislature intended the doctrine of collateral estoppel to apply when a party to a license revocation proceeding seeks to relitigate at the DMV hearing an issue that has already been adjudicated in the criminal proceeding. (See generally, *Grupe Development Co.* v. *Superior Court* (1993) 4 Cal.4th 911, 921 [16 Cal.Rptr.2d 226, 844 P.2d 545]; *Kinlaw* v. *State of California* (1991) 54 Cal.3d 326, 343 [285 Cal.Rptr. 66, 814 P.2d 1308]; *Southern Cal. Gas. Co.* v. *Public Utilities Com.* (1979) 24 Cal.3d 653, 659 [156 Cal.Rptr. 733, 596 P.2d 1149].)

Sound policy supports this legislative determination. The Legislature may well have concluded that because of the informal nature of administrative hearings before the DMV, it would be inappropriate to use the doctrine of

---

[6]The hearing held in this case was covered by section 13558, subdivision (g). Almost identical statutes govern other DMV suspension hearings. (See §§ 13353.2, subd. (e), 13557, subd. (f), 13559, subd. (b).)

collateral estoppel to bar relitigation, in an ensuing criminal proceeding, of issues already determined at the DMV license suspension hearing. By contrast, when the legality of a police officer's actions in detaining or arresting the motorist has already been adjudicated by a court of law, with its attendant formality, there appears to be no sound reason to again litigate the issue at the DMV hearing. To allow relitigation in this instance would lead not only to a more costly license revocation process, but it would also result in delaying that process, thus frustrating the Legislature's intent to create "'an expedited driver's license suspension system . . . .'" (*Bell* v. *Department of Motor Vehicles* (1992) 11 Cal.App.4th 304, 312 [13 Cal.Rptr.2d 830].)

Here, in reaching its conclusion that the Legislature did not intend parties to rely on the doctrine of collateral estoppel to bar relitigation at DMV hearings of issues finally adjudicated in the related criminal proceeding, the majority relies on section 13353.2, subdivision (e). That statute states in relevant part: "If a person is acquitted of criminal charges relating to [driving with a blood-alcohol level of 0.08 percent or greater], the department shall immediately reinstate the person's privilege to operate a motor vehicle . . . ." Through this provision, the majority reasons, the Legislature "has specified exactly what preclusive effect the criminal proceeding has" on the DMV hearing, and thus this court "may not grant greater preclusive effect . . . ." (Maj. opn., *ante*, at p. 852.) I disagree.

The language that the majority quotes from subdivision (e) of section 11353.2 has nothing to do with collateral estoppel. It simply says that if a motorist whose license has been suspended is later acquitted of the charges that led to the suspension, the DMV must reinstate the motorist's driver's license. It casts no light on whether the Legislature intended the doctrine of collateral estoppel to apply at DMV hearings held *after* adjudication of identical issues in a related criminal case.

I therefore conclude that in this case the DMV should be collaterally estopped from relitigating, at its administrative hearing, the legality of appellant's detention and arrest, because that issue had already been determined by a court in the related criminal proceeding. In view of this conclusion, I need not reach the question whether, as Justice Panelli asserts in his dissenting opinion, the same result is compelled by Penal Code section 1538.5, subdivision (d), which states that when a motion to suppress is granted, the evidence "shall not be admissible against the movant at any trial or other hearing . . . ."

## III

In this case, it is a motorist who seeks to invoke the doctrine of collateral estoppel to bar the DMV from relitigating the legality of the arresting

officer's detention. But collateral estoppel is a two-way street. By holding that the doctrine does not apply at DMV hearings, the majority not only bars *motorists* from using it, but it also precludes the *DMV* from relying on the doctrine in those cases in which a court, in the related criminal case, has *denied* the motorist's motion to suppress evidence on the ground that the motorist's detention or arrest violated the Fourth Amendment.

To allow both parties to the DMV license suspension proceeding—the motorist and the DMV—to invoke collateral estoppel would simplify those proceedings by preventing relitigation of issues already reliably determined by a court in the context of a criminal prosecution. As I have shown, this result is consistent with the specific language of section 13558, subdivision (g), and with the legislative goal of " 'an expedited driver's license suspension system . . . .' " (*Bell* v. *Department of Motor Vehicles, supra*, 11 Cal.App.4th at p. 312.) The majority, by its holding that the doctrine of collateral estoppel has no applicability to DMV license suspension proceedings, forces the parties to engage in unnecessary, time-consuming, and wasteful relitigation. Surely this is not what the Legislature intended.

I would affirm the judgment of the Court of Appeal.